James O. EVANS, Plaintiff-Appellant,

v.

DEPARTMENT OF TRANSPORTATION OF the UNITED STATES, Defendant-Appellee.

No. 31092.

United States Court of Appeals, Fifth Circuit.

July 13, 1971.

Rehearing Denied Sept. 2, 1971.

Richard L. Horn, Allan Milledge, Milledge & Horn, Miami, Fla., for plaintiff-appellant.

Robert W. Rust, U. S. Atty., Robert V. Zener, Leonard Schaitman, Dept. of Justice, Washington, D. C., L. Patrick Gray, III, Asst. Atty. Gen., for defendant-appellee.

Before COLEMAN, GOLDBERG, and DYER, Circuit Judges.

COLEMAN, Circuit Judge:

This appeal concerns the application of the Freedom of Information Act of 1966, 5 U.S.C., § 552. The District Court granted summary judgment against James O. Evans, who was the plaintiff below and is the appellant here. We affirm.

Invoking the provisions of the Act, on May 1, 1969, James O. Evans filed suit against the Department of Transportation of the United States, seeking disclosure of letters allegedly written on a date somewhere about October, 1960, to the Federal Aviation Agency, referring to his capabilities as a commercial airline pilot. The complaint alleged that from 1941 until April 15, 1960, Evans was actively employed by Pan American World Airways, Inc., as co-pilot and captain. On April 15, 1960, Pan American discharged him "for reasons unspecified by the carrier". In October, 1960, * * * "the Federal Aviation Agency received certain letters from a person or persons, or organization unknown to plaintiff, but which plaintiff upon information and belief alleges to be officials of Pan American World Airways, Inc., which said letters contained patently false and libelous allegations regarding plaintiff's mental fitness and abilities". As result, the Federal Aviation Agency summarily suspended plaintiff's medical certificate and required him to undergo psychiatric evaluation and testing. Upon completion of such procedure plaintiff's medical certificate was restored. [As a result of arbitration, Evans was also rehired by Pan American].

The complaint further alleged, on information and belief, that the officers and agents of Pan American had obtained the suspension of Evans' medical certificate by the use of the aforesaid letters and improperly advised the arbitrator of the psychiatric suspension and thereby materially and fraudulently prejudiced the arbitrator against plaintiff.

The remainder of the complaint recited Evans' repeatedly unsuccessful efforts to obtain disclosure of the identity of

the letter writer, such efforts allegedly extending over a period beginning in 1962 and ending in 1968.

The Department of Transportation raised the affirmative defenses that the documents are exempt from disclosure under 5 U.S.C., §§ 552(b) (3), (b) (4), and (b) (7), as well as 49 U.S.C., § 1504.

On October 2, 1970, the Department moved for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, asserting that there was no genuine issue of any material fact and that judgment should be entered for the Department as a matter of law. Attached to this motion was the affidavit of the Administrator of the Federal Aviation Agency, which stated, "I have determined that in my judgment a disclosure of those records and the information therein would adversely affect the interest of the writer of the letters and is not required in the interest of the public. 5 U.S.C., §§ 552(b) (4), 552(b) (7), and 49 U.S.C., § 1504, and the regulations promulgated by the Secretary of Transportation, 49 C.F.R. §§ 7.59(a) (2), 7.65".

The affidavit further stated that the letters to the Agency, sought by the plaintiff, described plaintiff's alleged problems of behavior disorder and mental abnormality as related to his qualifications to fly; that the first letter did not identify Evans, but asked what course the writer should follow to bring a pilot's overt acts of behavior disorder and mental abnormality to the attention of the proper officials, indicating the writer's concern about difficulties he might encounter if he named the pilot.

In response to that letter (continues the affidavit), the Chief Medical Officer of the Agency requested the writer to write directly to him and assured him, in specific language, that the letter would be kept confidential. In response to this, the correspondent identified Evans by name and set forth in detail the reasons which prompted the writer to believe that Evans "might be too mentally ill to be allowed to fly as a commercial pilot". The Chief Medical Officer then assured the correspondent in writing that his effort to bring the matter to the attention of the Agency was appreciated and that his trust would not be violated.

The affidavit concluded with the statement that the letters sought by the plaintiff led to a complete investigation, instituted by the Agency, into the qualifications of the plaintiff to hold a pilot's certificate. The letters were made part of that investigatory file "for law enforcement purposes in the enforcement of its regulations".

The final summary judgment entered in the case on October 15, 1970, after an *in camera* inspection of the letters, stated,

"The Court finds that the material which plaintiff seeks to have disclosed is exempted from disclosure by 5 U.S. C. Section 522(b) (3) and 49 U.S.C. Section 1504.

"The Court further finds that the material is also exempted from disclosure by 5 U.S.C. Section 552(b) (7).

"Defendant's motion for summary judgment is granted, and this case is dismissed with prejudice."

This Court can well understand why Mr. Evans, almost eleven years after the event, as a matter of personal curiosity if nothing else, would pursue his avid search for the identity of the writer of the letters. We are likewise well aware of the critical importance of requiring that commercial airplanes be flown only by pilots who are in good health, both mentally and physically. Furthermore, the protection of the safety of the traveling public in this regard is entrusted by law to the Federal Aviation Agency. As a matter of common sense the efforts of this Agency to investigate and take appropriate action as to the mental and physical health of pilots would be seriously jeopardized if individuals could not confidentially call facts to the attention of the Agency which might affect the safety and lives of millions of passengers.

824

In our opinion, it was just such situations as the one now before us which prompted Congress to exempt from the terms of the Act "investigatory files compiled for law enforcement purposes" as set forth in 5 U.S.C., § 552(b) (7).

We are of the further opinion that Congress could not possibly have intended that such letters should be disclosed once an investigation is completed. If this were so, and disclosure were made, it would soon become a matter of common knowledge with the result that few individuals, if any, would come forth to embroil themselves in controversy or possible recrimination by notifying the Federal Aviation Agency of something which might justify investigation.

The desire of an individual to know the name of the person who wrote these letters over ten years ago is totally submerged by the public interest, that is, the safety of millions of the general public who use airline transportation and who must depend upon the Federal Aviation Agency, *by investigation* and otherwise, to foster that safety. The investigatory functions of the Agency may not be crippled by a requirement not commanded by the statute, certainly not by a requirement specifically exempted by the statute.

█ We hold that these letters as a part of the investigatory files of the Federal Aviation Agency are exempt from disclosure under 5 U.S.C. § 552(b) (7).[1]

█ We further hold, however, that a failure to disclose in this case is authorized by 5 U.S.C., § 552(b) (3) and 49 U.S.C., § 1504.

1. The Senate Committee in its Report [S. Rep. 813, 89 Congress] stated:
"It is also necessary for the very operation of our Government to allow it to keep confidential certain material such as the investigatory files of the Federal Bureau of Investigation."
Upon signing the proposed Act into law the President stated:

By Section 552(b) (3) matters that are specifically exempted from disclosure by statute are exempt from the terms of the Freedom of Information Act.

49 U.S.C. [Federal Aviation Program] § 1504, reads as follows:

"Any person may make written objection to the public disclosure of information contained in any application, report, or document filed pursuant to the provisions of this chapter or of information obtained by the Board or the Administrator, pursuant to the provisions of this chapter, stating the grounds for such objection. Whenever such objection is made, the Board or Administrator shall order such information withheld from public disclosure when, in their judgment, a disclosure of such information would adversely affect the interests of such person and is not required in the interest of the public. The Board or Administrator shall be responsible for classified information in accordance with appropriate law: Provided, That nothing in this section shall authorize the withholding of information by the Board or Administrator from the duly authorized committees of the Congress."

Before he would name the pilot in question, the letter writer required assurances of complete non-disclosure. The assurances were given. This was a running, permanent objection to the disclosure of the writer's identity and is within the provisions of Section 1504.

The judgment of the District Court is Affirmed.

"A citizen must be able in confidence to complain to his Government and to provide information * * * I know the sponsors of this bill recognize these important interests and intend to provide for both the need of the public for access to information and the need of Government to protect certain categories of information."