Frank **FRANKEL** et al., Appellees,

v.

**SECURITIES AND EXCHANGE COM-
MISSION** et al., Appellants.

No. 533, Docket 71–2213.

United States Court of Appeals,
Second Circuit.

Argued Feb. 2, 1972.

Decided May 4, 1972.

Robert N. Kaplan, New York City
(Dermot G. Foley, Kaplan, Kilsheimer &
Foley, New York City on brief), for ap-
pellees.

Richard E. Nathan, Chicago, Ill. (G.
Bradford Cook, Chicago, Ill., David Fer-
ber, Michael A. Macchiaroli, Washington,
D. C., on brief), for appellants.

Before HAYS and OAKES, Circuit
Judges, and CLARIE, District Judge of
the District of Connecticut, sitting by
designation.

HAYS, Circuit Judge:

The Securities and Exchange Commis-
sion appeals from an order of the United
States District Court for the Southern
District of New York enjoining the
Commission from withholding certain
documents that the appellees, relying on
the Freedom of Information Act, 5 U.S.
C. § 552 (1970), sought to inspect and to
copy. The district court, 336 F.Supp.
675, held that the documents, which the
Commission had compiled in an investi-
gation and used in civil litigation against
persons who are not parties to this ac-
tion, were not exempt from disclosure
under the Freedom of Information Act,
5 U.S.C. § 552(b) (7) (1970) as "inves-
tigatory files," because the Commission
apparently did not intend to commence
further law enforcement proceedings in
which the documents would be used. We
reverse.

I.   The Facts

In November, 1970, the Commission
began a nonpublic investigation of Occi-
dental Petroleum Corporation and some
of its officers and directors. The Com-
mission sought to determine whether
certain statements of, and omissions to
state, facts relating to various real es-
tate transactions, in documents filed
with the Commission and in press re-
leases, violated § 10(b) of the Securities
Exchange Act of 1934, 15 U.S.C. §
78j(b) (1970) and Rule 10b–5, 17 C.F.R.
240. 10b–5 (1972). During the course
of this investigation the Commission
heard testimony from at least 23 wit-
nesses and obtained numerous docu-
ments from Occidental, individuals con-
nected with that corporation, and third
persons. The Commission amassed an

investigatory file totaling over 7000 pages of testimony and documents relating to the affairs of Occidental and individuals connected with it, corporations with which Occidental dealt, and third persons. On the basis of information obtained during the investigation, the Commission commenced a civil action against Occidental and its president, Armand Hammer, on March 4, 1971 in the United States District Court for the Southern District of New York. The complaint alleged that Occidental and Hammer violated § 10(b) and Rule 10b–5; the Commission sought injunctive relief against further violations of the statute and the Rule. On March 5, the Commission and the defendants agreed upon a consent decree, and both the investigation and the suit were terminated when the court entered judgment on the basis of the consent decree.

Appellees in this action are shareholders of Occidental. They commenced a class action for damages against Occidental and Hammer, alleging various violations of the securities laws. The source of the facts alleged in their complaint was apparently the complaint filed by the Commission in its suit against Occidental and Hammer.

On March 22, 1971, appellees' attorneys wrote the Commission "seeking documentary support for" the allegations of their complaint, and requested that appellees be permitted to inspect and to copy:

"[a]s to each and every violation of Section 10b . . . and/or of Rule 10(b)–5 . . ., which occurred during the period January 1, 1966 to March 4, 1971 referred to or alleged in the complaint filed by the [Commission in its suit against Occidental and Hammer] . . . each and every document [defined as including 'all letters, telegrams, reports, studies, memoranda, notes, lists, tabulations, press releases, summaries, analyses and other writings, including drafts'] which supports, explains and/or discusses such claimed violations.

" . . . [E]ach and every document written by or to any employee of the Securities and Exchange Commission discussing any facts which supports [sic] the allegations in the SEC complaint. . . . "

The Commission notified appellees' attorneys that the request was being considered by the Commission's staff. On April 22, the appellees' attorneys renewed the request for the documents. On May 27, having received no ruling on their requests, the appellees commenced this action seeking injunctive relief against continued withholding of the documents. The appellees alleged that the Commission was withholding the documents in violation of the provisions of the Freedom of Information Act. The Commission's answer set forth various affirmative defenses, including the defenses that the documents were not subject to the mandatory public disclosure requirements of the Freedom of Information Act by virtue of the "investigatory files" exemption, 5 U.S.C. § 552(b) (7) (1970), the "trade secrets" exemption, 5 U.S.C. § 552(b) (4) (1970), the "inter-agency or intra-agency memorandums" exemption, 5 U.S.C. § 552(b) (5) (1970), and the exemption for documents "specifically exempted from disclosure by statute," 5 U.S.C. § 552(b) (3) (1970). The Commission moved for summary judgment.

## II. The District Court Ruling

The district court denied the Commission's motion for summary judgment and granted in part appellees' motion for an injunction against continued withholding of the documents. The district court ruled that the "investigatory files" provision of the Freedom of Information Act exempts an agency from the disclosure requirements of the Act only "for so long as it [the agency] is actually or reasonably likely to be involved in an investigation for law enforcement purposes. . . ." The court took the position that, since the original investigation of Occidental and Hammer had been concluded on the date of the entry

of the consent judgment, and since the Commission has taken no affirmative action "to maintain the file as a legitimate one 'compiled for [current] law enforcement purposes,'" the exemption from disclosure provided by § 552(b) (7) no longer applied to the documents requested by the appellees. The court further held that "18 U.S.C. § 1905 [the Trade Secrets Act] does not establish an exemption from the Freedom of Information Act [under § 552(b) (3)], but merely penalizes a disclosure of non-exempt material." The court deferred decision on appellees' motion for an injunction pending receipt of the report of a special master appointed by the court to review the voluminous file and to report whether or not any of the requested documents fell within the coverage of § 552(b) (4), which exempts an agency from having to disclose "trade secrets and commercial or financial information obtained from a person and privileged or confidential," and § 552(b) (5) which exempts "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." The court granted appellees' motion for an injunction requiring the Commission to allow the appellees to inspect and to copy all the records that the Commission did not claim to be exempt under § 552(b) (4) or (b) (5).

### III.

The question presented by this appeal is whether the exemption from disclosure to "any person" of "matter" contained in an "investigatory file" compiled and utilized by an agency in an enforcement proceeding applies after the investigation and the enforcement proceeding have terminated. The Commission's investigation of Occidental and

Hammer and its enforcement proceeding were successfully concluded on March 5, 1971; the appellees first requested copies of the documents contained in the investigatory file on March 22. The Commission has not commenced any further enforcement proceedings based on information obtained during the investigation. On the other hand the Commission has not affirmatively decided that no further action will be taken against individuals or corporations connected with the transactions and occurrences which were investigated.

The relevant sections of the Freedom of Information Act,[1] 5 U.S.C. § 552 (1970), provide:

> (b) This section [of the Administrative Procedure Act requiring agencies to make information available to the public] does not apply to matters that are—
>
> .    .    .    .    .    .
>
> (3) specifically exempted from disclosure by statute;
>
> .    .    .    .    .    .
>
> (7) investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency; .    .    .    ."

The statute on its face does not limit the "investigatory files" exemption to files that the agency is currently using or is planning to use in a law enforcement proceeding. To assist us in determining whether the statutory exemption for "investigatory files" applies after enforcement proceedings have been terminated, we turn to the legislative history of the Act.

### A.   The Freedom of Information Act

The Freedom of Information Act marked the culmination of over ten years of congressional study of the practices and procedures of the executive

---

1. The discrepancies between the enacted version of the Freedom of Information Act, Pub.L. 89–487, 80 Stat. 250, and the codified version are the result of changes made during codification to conform the enacted version with the style of Title 5 of the United States Code. These changes were not intended to alter in any way the substance of the law as originally enacted. See 1967 U. S.C.Cong. & Admin.N. p. 1196.

branch in the administration of national law. The Senate Report on the Act[2] stated that the prior provisions of the Administrative Procedure Act were "full of loopholes" that often enabled federal administrative agencies improperly to withhold from the public information relating to the operations of government. Federal agencies also sometimes utilized the doctrine of "executive privilege"[3] to bar disclosure of information bearing upon the governmental process.

The broad legislative intent behind the enactment of the Freedom of Information Act, as disclosed by the Report of the Senate Committee on the Judiciary[4] and the Report of the House Committee on Government Operations,[5] was to give the electorate greater access to information concerning the operations of the federal government. The ultimate purpose was to enable the public to have sufficient information in order to be able, through the electoral process, to make intelligent, informed choices with respect to the nature, scope, and procedure of federal governmental activities.[6]

The Senate Report said of the bill:

"  . . .   [i]t eliminates the test of who shall have the right to different information. For the great majority of different records, the public as a whole has a right to know *what its Government is doing*. There is, of course, a certain need for confidentiality in some aspects of Government operations and these are protected specifically; but outside these limited

areas, all citizens have a right to know."

*Id.* at 5-6 (emphasis added). The House Report, after citing several examples of agencies withholding information relating to their operations, House Report at 5-6, states:

"It is vital to our way of life to reach a workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy. The right of the individual to be able to find out how his Government is operating can be just as important to him as his right to privacy and his right to confide in his Government. This bill strikes a balance considering all these interests."

*Id.* at 6. In conclusion, the House Report observed:

"In the time it takes for one generation to grow up and prepare to join the councils of Government—from 1946 to 1966—the law which was designed to provide public information about Government activities has become the Government's major shield of secrecy.

S. 1160 will correct this situation. It provides the necessary machinery to assure the availability of Government information necessary to an informed electorate."

*Id.* at 12.

The legislative history, and, indeed, the various disclosure provisions of the

---

2. S.Rep.No.813, 89th Cong., 1st Sess. 3 (1965), hereinafter cited as Senate Report.

3. See United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953); Davis, The Information Act: A Preliminary Analysis, 34 U.Chi.L.Rev. 761, 763-65 (1967).

4. Senate Report at 2-3.

5. H.R.Report No. 1497, 89th Cong., 2d Sess. (1966), hereinafter cited as House Report. Some courts and commentators have suggested that the Senate Report better indicates the legislative intent of

Congress as a whole because the House Report was not printed until after the Senate had passed the bill and sent it to the House. See *Getman v. N. L. R. B.*, 450 F.2d 670, 673 n. 8 (D.C.Cir. 1971). See also Davis, *supra*, at 762-63. Whatever merit this suggestion may have with respect to isolated sentences dealing with specific provisions of the Act, the same broad purpose behind the Act as a whole and its major provisions is reflected in both reports.

6. Senate Report at 2-3, 10; House Report at 2, 3, 5-6, 12.

Act itself clearly indicate that the general purpose of the Act was that the public be informed about the processes of government so that the electorate would be in a better position to pass upon the structure and operation of government.

B. The "Investigatory Files" Exemption

The Senate and House Reports also reveal the general legislative purpose for exempting from disclosure matter contained in investigatory files compiled for law enforcement purposes.

The Senate Report states:

"Exemption No. 7 deals with 'investigatory files compiled for law enforcement purposes.' These are the files prepared by Government agencies to prosecute law violators. Their disclosure of such files, except to the extent they are available by law to a private party, could harm the Government's case in court."

Senate Report at 9. An earlier portion of the same report, discussing the general purpose of the Act, said of the need for balancing the interests of disclosure and confidentiality:

"It is also necessary for the very operation of our Government to allow it to keep confidential certain material, such as the investigatory files of the Federal Bureau of Investigation."

Senate Report at 3.

The House Report, in discussing the "investigatory files" exemption, states:

"This exemption covers investigatory files related to enforcement of all kinds of laws, labor and securities laws as well as criminal laws. This would include files prepared in connection with related Government litigation and adjudicative proceedings. S. 1160 is not intended to give a private party indirectly any earlier or greater access to investigatory files than he would have directly in such litigation or proceedings."

House Report at 11.

These Reports indicate that Congress had a two-fold purpose in enacting the exemption for investigatory files: to prevent the premature disclosure of the results of an investigation so that the Government can present its strongest case in court, and to keep confidential the procedures by which the agency conducted its investigation and by which it has obtained information. Both these forms of confidentiality are necessary for effective law enforcement.

The conclusion that the § 552(b) (7) exemption from disclosure applies even after an investigation and an enforcement proceeding have been terminated is supported both by the authority of the cases decided under the Act and by consideration of the policies underlying the Act in general and the investigatory files exemption in particular. In Evans v. Department of Transportation, 446 F.2d 821, 824 (5th Cir.), petition for cert. filed, 40 U.S.L.W. 3625 (U.S. Nov. 24, 1971) (No. 71–698), the court said:

"We are of the further opinion that Congress could not possibly have intended that such [matter] should be disclosed once an investigation is completed. If this were so, and disclosure were made, it would soon become a matter of common knowledge with the result that few individuals, if any, would come forth to embroil themselves in controversy or possible recrimination by notifying the [agency] of something which might justify investigation."

See also NLRB v. Clement Bros. Co., 407 F.2d 1027 (5th Cir. 1969).

If an agency's investigatory files were obtainable without limitation after the investigation was concluded, future law enforcement efforts by the agency could be seriously hindered. The agency's investigatory techniques and procedures would be revealed. The names of people who volunteered the information that had prompted the investigation initially or who contributed information during the course of the investigation would be disclosed. The possibility of such disclo-

sure would tend severely to limit the agencies' possibilities for investigation and enforcement of the law since these agencies rely, to a large extent, on voluntary cooperation and on information from informants.

In the present case disclosure would have but small effect with respect to the general purposes of the Act, the better informing of the electorate as to the operations of government. On the contrary it would defeat important purposes of the exemption for investigatory files. We therefore reverse.

Of course our decision does not mean that appellees are completely barred from obtaining information contained in the requested documents. In their suit against Occidental and Hammer appellees are entitled to the usual remedy of discovery under the discovery provisions of the Federal Rules of Civil Procedure. In the discovery procedure a district judge will be able to balance the need for the documents with the need for confidentiality.

The order of the district court is reversed, and remanded with directions to enter summary judgment for appellants.

OAKES, Circuit Judge (dissenting):

Legislative history can often be a helpful device for judges in the dark seeking light, as we are here.[1] But the legislative history of the Freedom of Information Act is so extensive and so full of internal inconsistencies that Professor Davis has said of it:

> Even though the records of the various hearings over a ten year period

are voluminous, probably more than ninety-five per cent of the useful legislative history is found in a ten page Senate Committee report and in a fourteen page House Committee report. . . . Committee reports not addressed to the enacted version of the bill do not show the intent of Congress in enacting the statute. They show what the intent of Congress would have been if it had enacted the bill it did not enact.

Davis, The Information Act: A Preliminary Analysis, 34 U.Chi.L.Rev. 761, 762, 791 (1967). Unfortunately, nothing in the two reports Professor Davis mentions sheds any light on the specific question before us.[2] That question is whether, once an investigation has been terminated, and utilization of the files for law enforcement purposes is not reasonably likely, "investigatory files compiled for law enforcement purposes" [5 U.S.C. § 552(b) (7)] are exempt from the disclosure requirements of 5 U.S.C. § 552(a) (3). Indeed, our question is narrower still, for a careful district judge specifically framed his order and accompanying memorandum to preserve to the SEC, through in camera production, its exemptions under 5 U.S.C. § 552(b) (4), "commercial or financial information obtained from a person and privileged or confidential," and (b) (5), "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."[3]

---

1. Perhaps legislative history should be utilized only when it is subordinated, like the words of the act, to the "principal task of deriving the specific intent of Congress from a full and sympathetic understanding of its purpose." Cox, Judge Learned Hand and the Interpretation of Statutes, 60 Harv.L.Rev. 370, 381–82 (1947).

2. An early Senate report does indicate that the Act "is not a withholding statute but a disclosure statute . . . ." Senate Rep. No. 813, 89th Cong., 1st Sess. 5 (1965).

3. Frankel v. SEC, 336 F.Supp. 675 (S.D. N.Y., Oct. 20, 1971 [mem.]; Nov. 5, 1971 [order]). By thus narrowing his decree, Judge Lasker takes away the force of the majority's argument that future law enforcement efforts could be hindered by revealing the agency's investigatory techniques and procedures or the names of informants. It seems to me that under subsections (b) (4) and (b) (5) adequate protection of these legitimate agency objectives is assured. Moreover, while the government may have a privilege not to disclose the *identity* of informers,

On the narrow question before us reasonable judges may readily differ. I dissent from the views of my brethren because I think the Act contains an underlying recognition that disclosure of the workings of a government bureaucracy, which long since has suffered the "curse of bigness," can benefit the agency by increasing its sense of responsibility to the public. The Freedom of Information Act has as its aim, in other words, a delegation by Congress to the federal courts of the power to subject agency operations to public perusal. Behind this policy are some of the same considerations which underpin freedom of the press; at the very least the Act was intended to expand the possibility of "participation in decision making by all members of society." T. Emerson, The System of Freedom of Expression 7 (1970).

It is, therefore, not surprising that other respectable courts have taken a view differing from that of the majority today and of the Fifth Circuit in Evans v. Department of Transportation, 446 F.2d 821 (5th Cir. 1971), cert. denied, 405 U.S. 918, 92 S.Ct. 944, 30 L.Ed.2d 788 (1972), upon which the majority relies.[4] In Bristol-Meyers Co. v. FTC, 138 U.S.App.D.C. 22, 424 F.2d 935, cert. denied, 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed. 2d 52 (1970), the District of Columbia Court of Appeals declared that the "investigatory files" exemption is available to the agency only "[i]f further adjudicatory proceedings are imminent." 424 F.2d at 939. Prevention of "premature discovery by a defendant" is the purpose of the exemption according to the Fourth Circuit. Wellford v. Hardin, 444 F.2d 21, 23 (4th Cir. 1971). Judge Higginbotham has put it that the purpose is "to avoid a *premature* disclosure of an agency's case when engaged in law enforcement activities." Cooney v. Sun Shipbuilding & Drydock Co., 288 F. Supp. 708, 711–712 (E.D.Pa.1968) (emphasis original). He looks at the exemptions, quite practically, as a codification of existing judically and congressionally created exceptions. *Id.* at 712.[5]

---

Roviaro v. United States, 353 U.S. 53, 59–61, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), *here the SEC has already disclosed the names of the witnesses who gave testimony to it.* The SEC concedes that the subsection (b) (4) and (b) (5) exemptions would cover much of the material in their investigative files but worries lest Grumman Aircraft Engineering Corp. v. Renegotiation Board, 138 U.S.App.D.C. 147, 425 F.2d 578 (1970), will cause it some work by its requirement of "suitable deletions" by the agency from each document to make the protection of the exemption available. 425 F.2d at 581. See also Getman v. NLRB, 450 F.2d 670, 673 (D.C.Cir.1971); Soucie v. David, 448 F.2d 1067, 1078 (D.C.Cir. 1971). This is a typical agency argument and it really doesn't rise to a level warranting judicial reply.

4. Our own case, LaMorte v. Mansfield, 438 F.2d 448, 451 (2d Cir. 1971), doesn't go to the specific question here.

5. The commentaries in point shed no more light than the legislative history. One, less a carefully reasoned legal analysis than it is a polemic, as its name implies, is Katz, The Games Bureaucrats Play: Hide and Seek under the Freedom of Information Act, 58 Texas L.Rev. 1261 (1970). Ms. Katz does make the point that the exceptions—including the "investigatory files" exception—are "administrative loopholes through which federal officials escape with records intact." *Id.* at 1262, and see 1277–84. She goes on to say that "[o]nce litigation is concluded, disclosure is impliedly required." *Id.* at 1279. And she adds:

Admittedly it may sometimes be difficult for the agency itself to know whether an enforcement action will be brought in the near future. As long as there is a realistic prospect that such an action will be instituted, and as long as administrators endeavor to make the enforcement decision as quickly as possible, the exemption should apply. But the exemption should not avail an agency that claims only that its investigatory files are "open" and therefore always subject to use in hypothetical future enforcement proceedings.

*Id.* at 1280 n. 100.

Another Naderite, Peter H. Schuck, Esq., has recently told a congressional committee that the Act "has foundered on the rocks of bureaucratic self-interest and secrecy." N.Y. Times, Mar. 15, 1972, at 19, col. 1 (city ed.). I would suggest

An analysis of the prior case law discloses a number of times when government agencies have been required, on a showing of good cause, to produce documentary material obtained in the course of an investigation. Disclosure of grand jury minutes, for example, has been ordered in private antitrust cases involving electric companies. Atlantic City Electric Co. v. A. B. Chance Co., 313 F. 2d 431 (2d Cir. 1963) (*per curiam*) (minutes turned over to antitrust plaintiff); accord, Consolidated Edison Co. v. Allis-Chalmers Manufacturing Co., 217 F.Supp. 36 (S.D.N.Y.1963). *See also* Illinois v. Harper & Row Publishers, Inc., 50 F.R.D. 37 (N.D.Ill.1969) (children's books antitrust suit). Documents possessed by the Internal Revenue Service that bear directly upon disputed tax calculations have also been disclosed by court order. Timken Roller Bearing Co. v. United States, 38 F.R.D. 57 (N. D.Ohio 1964); accord, United States v. Gates, 35 F.R.D. 524 (D.Colo.1964); United States v. San Antonio Portland Cement Co., 33 F.R.D. 513 (W.D.Tex. 1963). The United States Justice Department itself has been the subject of disclosure orders. Royal Exchange Assurance v. McGrath, 13 F.R.D. 150 (S. D.N.Y.1952) (Attorney General ordered to produce for trustee investigative reports regarding conduct and control of foreign corporation; Zimmerman v. Poindexter, 74 F.Supp. 933 (D.Hawaii 1947) (FBI ordered to produce investigative reports pertaining to plaintiff's alleged wrongful imprisonment).

I am of the view that the federal courts can amply safeguard investigatory agency procedures and informants by in camera examination of the files in doubtful cases. Thus the fear of exposure underlying the majority's view is largely groundless. The argument to

that it has foundered on the rocks of equivocal draftsmanship. One of its pertinent critical failings has been pinpointed by Professor Davis:

The Act is faulty in its use of the unsatisfactory term "files." Much of the contents of investigatory files compiled

which the SEC is ultimately reduced is that it should not be required to disclose its files to just "any person." The fact is that plaintiffs here are or were in litigation with Occidental Petroleum. Thus, if the words "any person" mean any person with standing, plaintiffs here surely have it.

I would affirm the opinion and judgment below.

for purposes that may include law enforcement should not be exempt from required disclosure.

Davis, The Information Act: A Preliminary Analysis, 34 U.Chi.L.Rev. 761, 800 (1967).