**WELLMAN INDUSTRIES, INC.,**
**Appellant,**

v.

**The NATIONAL LABOR RELATIONS**
**BOARD et al., Appellees.**

**No. 73–1581.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 7, 1973.

Decided Jan. 22, 1974.

---

* Because of his lower fee, Mrs. Merola had Dr. Schneider operate on her feet.

Jeffrey S. Dubin, Great Neck, N. Y. (Peter D. Hyman, Hyman, Morgan & Brown, Florence, S. C., and Mirkin, Barre, Saltzstein & Gordon, P. C., Great Neck, N. Y., on brief) for appellant.

R. Bruce McLean, Atty., Washington, D. C. (Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and Abigail Cooley, Asst. Gen. Counsel, NLRB, on brief) for appellees.

Before BOREMAN, Senior Circuit Judge, and CRAVEN and FIELD, Circuit Judges.

CRAVEN, Circuit Judge:

Wellman Industries, Inc., appeals from an order of the district court denying it access under the Freedom of Information Act, 5 U.S.C. § 552, to affidavits obtained by an NLRB investigator during his inquiry into Union objections to a representation election held at Wellman's Johnsonville, South Carolina, facility. These affidavits, Wellman alleges, were the basis of an order by the Regional Director of the NLRB setting aside that election.

At a second election a majority of Wellman's employees chose the Union as their bargaining representative, and the Union was so certified after objections by Wellman were dismissed and a Request for Review denied by the Regional Director. On September 26, 1972, the Union requested that Wellman bargain; that request was refused on October 4, 1972. The Board then issued a complaint charging the Company with refusal to bargain under Section 8(a)(5) of the National Labor Relations Act, 29 U. S.C. § 158(a)(5). The Company raised the defense of improper certification; whereupon General Counsel for the Board moved for summary judgment, and the matter was transferred to the Board in Washington, D. C., by order dated November 15, 1972. Wellman filed a statement in opposition to the motion for summary judgment, together with cross-motions seeking affidavits and memoranda under the FOIA. On May 30, 1973, the motion for summary judgment was denied by the Board and the case remanded to the Regional Director for a hearing on the question of newly-discovered evidence relating to the April 1972 (second) election.

On January 25, 1973, the Company filed the complaint in this case. Without specifically deciding whether exemptions 4 and 7 of the FOIA were

applicable,[1] the district court relied upon its equitable power not to issue an injunction where an adequate remedy at law was available and where such action would produce circuity of action, stating: "Foremost in the mind of the Court is the fact that the question of the Plaintiff's rights under the Freedom of Information Act will be before the Circuit Court of Appeals in the very near future, whether this Court does or does not issue an injunction." Wellman appeals, and we affirm, though not for the reasons given by the district judge.

■ The district court's "balancing of the equities" approach[2] to withholding injunctive relief under the FOIA is not without support, see General Services Administration v. Benson, 415 F.2d 878 (9th Cir. 1969); Consumers Union v. Veterans Administration, 301 F.Supp. 796 (S.D.N.Y.1969); Davis, Administrative Law Treatise § 3A.6, at 123–24 (1970 Supp.) (hereinafter cited as Davis). However, this court noted in Wellford v. Hardin, 444 F.2d 21 (4th Cir. 1971), that:

> After considering voluminous testimony on both sides and balancing the public, private, and administrative interests, Congress decided that the best course was open access to the governmental process with a very few exceptions. It is not the province of the courts to restrict that legislative judgment under the guise of judicially balancing the same interests that Congress has considered.

444 F.2d at 24–25. Again, in Robles v. Environmental Protection Agency, 484 F.2d 843 (4th Cir. 1973), we said, in another context:

> Equally unpersuasive is the argument that disclosure should be refused because it "would do more harm than good". Such an argument has nothing to do with "personal privacy" but is rather an argument that courts, in disposing of actions under the Act, may exercise discretion to grant or deny equity relief. While such argument has received some limited support, the better reasoned authorities find no basis for this balancing of equities in the application of the Act; indeed, the very language of the Act seems to preclude its exercise.

484 F.2d at 847. We adhere to that viewpoint and hold that 5 U.S.C. § 552(c) means what it says: that the Act "does not authorize withholding of information or limit the availability of records to the public, *except as specifically stated in this section.*" (emphasis added.)

■ We must, therefore, look to the specific exemptions provided for in the Act. The Board suggests the affidavits are protected from disclosure as within two exemptions: (1) "trade secrets and commercial or financial information obtained from a person and privileged or confidential;" and (2) "investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency; . . . ."[3] We think the affidavits are clearly within the second exemption and thus need not decide whether they also fall within the former. *See generally,*

---

1. The district court's order referred to the Board's argument that exceptions 4 and 7 exempted the affidavits from disclosure under the FOIA as "rather weak" and went on to state:

As to exception 7, it must be remembered that this is not information originally contained in "investigatory files compiled for law enforcement purposes". The statements and affidavits were taken in connection with the certification election, a non-adversary proceeding, and before any complaint was brought by the Board for an unfair labor practice.

2. The district judge stated in his order:

In considering whether or not to issue an injunction, this Court must consider all of the facts before it, the purposes and needs of the parties, the burdens involved, the importance of the information and the reasons for non-disclosure.

3. These exemptions are contained in 5 U.S.C. § 552(b)(4) and (7) and are commonly referred to as exemptions 4 and 7.

**430**

Consumers Union v. Veterans Administration, 301 F.Supp. 796, 802 (S.D.N.Y. 1969); Davis, *supra* at § 3A.19.

Wellman argues that while the investigatory files exemption applies to information obtained *after* an unfair labor practice complaint has been filed, it does not protect material obtained in Board investigations of representation election irregularities prior to the filing of an unfair labor practice charge since no enforcement proceedings were contemplated and the entire process was nonadversary in nature. *But see* Evans v. Department of Transportation, 446 F.2d 821 (5th Cir. 1971). While it is true that the cases cited by the Board uphold non-disclosure under exemption 7 only with regard to files assembled after an unfair labor practice complaint was filed by the Board, Clement Bros., Inc. v. NLRB, 282 F.Supp. 540 (N.D.Ga.1968); Barceloneta Shoe Corp. v. Compton, 271 F.Supp. 591 (D.P.R.1970),[4] we believe appellant urges too narrow a view of "law enforcement purposes."

 Congress has given the Board wide discretion in the enforcement of rights guaranteed by Section 7 of the National Labor Relations Act, 29 U.S.C. § 157. Under Section 9 of the NLRA, 29 U.S.C. § 159, the Board is responsible for supervising elections, investigating election irregularities and certifying bargaining representatives. When an election investigation is undertaken, as in this case, there is no certainty that an unfair labor practice proceeding under Section 8 will follow. The election irregularities themselves may be sufficient to trigger an unfair labor practice complaint, *see* NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L. Ed.2d 547 (1969), or they may lead only (as here) to voiding the results of the election and the holding of a second election. In this latter case there is no direct review of such a determination, and in order to challenge the union's certification the employer must refuse to bargain, triggering unfair labor practice proceedings under Section 8(a)(5), as Wellman has done. A.F.L. v. NLRB, 308 U.S. 401, 407–409, 60 S.Ct. 300, 84 L.Ed. 347 (1940); Boire v. Greyhound Corp., 376 U.S. 473, 476–479, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964). Whether or not resulting in an unfair labor practice charge, the Board's purpose here was to protect and vindicate rights set out in Section 7. Though procedures vary, if aimed at enforcement of the NLRA we think they are "for law enforcement purposes."

The legislative history of exemption 7 clearly supports such an interpretation.[5] The House Report states:

> This exemption covers investigatory files related to enforcement of *all kinds of laws, labor and securities laws as well as criminal laws.* This would include files prepared in connection with related Government litigation and adjudicative proceedings. S. 1160 is not intended to give a private party indirectly any earlier or greater access to investigatory files than he would have directly in such litigation or proceedings.

H.R.Rep.No.1497, 89th Cong.2d Sess. 11 (1966), U.S.Code Cong. & Admin.News 1966, p. 2428 (emphasis added). The Senate Report, in not so broad terms, indicates that:

> These [investigatory files] are the files prepared by Government agencies to prosecute law violators. Their disclosure of such files, except to the extent they are available by law to a private party, could harm the Government's case in court.

---

4. *See also* Frankel v. Securities and Exchange Comm'n, 460 F.2d 813 (2d Cir.), cert. denied, 409 U.S. 889, 93 S.Ct. 125, 34 L.Ed.2d 146 (1972); *cf.* Bristol-Myers Co. v. FTC, 138 U.S.App.D.C. 22, 424 F.2d 935, 939–940, cert. denied 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970).

5. The weight which we attribute to the legislative history of exemption 7 is considerably greater than that attributable to the legislative history of exemption 4 for reasons set out by Davis, *supra*, at § 3A.19 and § 3A.22.

S.Rep.No.813, 89th Cong., 1st Sess. 9 (1965). While the Senate's use of the term "law violators" might be construed to mean transgressions of the criminal law, it can also easily be accommodated to the House statement without doing damage to the statutory language. See Clement Bros., Inc. v. NLRB, 282 F. Supp. 540 (N.D.Ga.1968); Barceloneta Shoe Corp. v. Compton, 271 F.Supp. 591 (D.P.R.1970).

The practical reasons favoring application of exemption 7 have already been sufficiently exposited by this court and numerous others. We said in Intertype Co. v. NLRB, 401 F.2d 41 (4th Cir. 1968, cert. denied 393 U.S. 1049, 89 S.Ct. 686, 21 L.Ed.2d 1691 (1969), a case almost precisely identical with the case at bar, but decided prior to the effective date of the FOIA, relying on the language of NLRB v. National Survey Service, Inc., 361 F.2d 199, 206 (7th Cir. 1966), that:

> If an employee knows that statements made by him will be revealed to an employer, he is less likely, for fear of reprisal, to make an uninhibited and non-evasive statement.

401 F.2d at 45. *See also* Intertype Co. v. Penello, 269 F.Supp. 573 (W.D.Va. 1967). This same concern has continued to be echoed by courts since the enactment of the FOIA. *See, e. g.,* Frankel v. SEC, 460 F.2d 813, 817–818 (2d Cir.), cert. denied 409 U.S. 889, 93 S.Ct. 125, 34 L.Ed.2d 46 (1972); Evans v. Department of Transportation, 446 F.2d 821, 823–824 (5th Cir. 1971); Clement Bros., Inc. v. NLRB, 282 F.Supp. 540, 542 (N. D.Ga.1968). We have also stated our agreement with the proposition so clearly set out in the legislative history that exemption of investigatory files is necessary in order to prevent premature disclosure of an investigation so that the Board can present its strongest case in court. Wellford v. Hardin, 444 F.2d 21 (4th Cir. 1971).

Wellman is not without protection from arbitrary action by the Board. *See* NLRB v. Poinsett Lumber and Mfg. Co., 221 F.2d 121 (4th Cir. 1955); W.

T. Grant Co. v. NLRB, 337 F.2d 447 (7th Cir. 1964); NLRB v. Vapor Blast Mfg. Co., 287 F.2d 402 (7th Cir.), cert. denied 368 U.S. 823, 82 S.Ct. 42, 7 L. Ed.2d 28 (1961). But there is no showing of arbitrary action in this case; therefore, the Company must await a final order of the Board and, if aggrieved, pursue its right of review in this court under Section 10(e) or (f) of the NLRA, 29 U.S.C. § 160(e) and (f).

Affirmed.