NATIONAL PUBLIC RADIO et al., Plaintiffs,

v.

Griffin B. BELL, Defendant.

Civ. A. No. 75–1593.

United States District Court, District of Columbia.

Feb. 5, 1977.

**510**

William A. Dobrovir, Washington, D. C., for plaintiffs.

Lynne K. Zusman, Atty., Information and Privacy Section, Civ. Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM

GASCH, District Judge.

This is an action arising under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, as amended by Pub.L. 93–502, 88 Stat. 1561–1564. Plaintiffs seek access to records of the Federal Bureau of Investigation and of the Department of Justice which were compiled in the course of those agencies' investigations of matters surrounding the death of Karen Silkwood, an employee of the Kerr-McGee Corporation, a major manufacturer of plutonium and uranium fuels for nuclear reactors. Plaintiffs also seek documents related to the Department of Justice and FBI investigations of the contamination of Ms. Silkwood by plutonium and of the possibility of obstruction of justice in connection with these investigations. The three investigatory files are referred to as the "death investigation," "obstruction of justice," and "contamination" files by the parties and will be referred to in that manner by the Court.

The subject of these investigations is one which has apparently aroused considerable public—and even congressional[1] interest. Karen Silkwood was employed at a Kerr-McGee plutonium fuel facility in Oklahoma where she was apparently quite active in her union's affairs. On November 13, 1974, in the midst of representing her union in ongoing contract negotiations with Kerr-McGee, Ms. Silkwood was killed in an automobile crash while allegedly enroute to a meeting with a union official and a reporter for the New York Times. There apparently exists some evidence that her automobile may have been driven off the road by another car, but no other vehicle has ever been found. Further, a file of documents which Ms. Silkwood was reportedly carrying at the time of her death was never recovered.

Plaintiffs are National Public Radio, a nonprofit corporation providing network services to public radio stations nation-wide, and Barbara Newman, a reporter for that organization. On May 1, 1975, they filed an FOIA request which sought access to the entire "death investigation" and "contamination" files.[2] These documents were (and, in part, remain) in the files of the FBI and of the Criminal Division of the Department of Justice. The latter agency granted plaintiffs' request only as to those documents which arguably did not constitute either inter- or intra-agency memoranda and letters, attorneys' notes and work product, or correspondence received by the Criminal Division. The FBI categorically denied access to all requested documents in its possession, with the exception of certain "public source information."

On June 10, 1975, plaintiff Newman appealed this disposition of her request to the Attorney General. On September 16, Deputy Attorney General Harold R. Tyler affirmed the decisions of the FBI and Criminal Division in large part; he did, however, grant plaintiffs access to one additional letter emanating from the Criminal Division and to fifty-eight additional pages of FBI records. The remainder of the Criminal Division and FBI "death investigation" and "contamination" files were withheld as exempted from disclosure under Exemptions 2

---

1. At oral argument, defendant's counsel stated that a Deputy Assistant Attorney General had been requested to testify before Congress on this matter and would soon do so.

2. There was no "obstruction of justice" file in existence at that time; that investigation was not undertaken until July 18, 1975.

and 5, and 7(A), respectively, of the FOIA, 5 U.S.C. § 552(b)(2), (5), (7)(A).[3]

Since much of the material sought by plaintiffs has now been released to them,[4] the only remaining matters contested by the parties involve the "contamination" file, which defendant has withheld in its entirety as exempt under § 552(b)(7)(A), and that portion of the Criminal Division's part of the "death investigation" file to which the parties refer as the "closing memoranda," withheld as exempt under § 552(b)(5). The parties have each moved for summary judgment on the "contamination" file issue and defendant has moved for summary judgment as to the entire case.[5] Plaintiffs have opposed defendant's additional motion only with respect to the "closing memoranda" materials.

I. *The Exemption 5 Claim for the "Closing Memoranda" of the "Death Investigation" File*

Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5), exempts from mandatory disclosure all documents which are:

> inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency

In his motion for summary judgment, defendant maintains that the withheld portion of the "death investigation" file, referred to by the parties as the Criminal Division's "closing memoranda" on that investigation, is exempt from disclosure under this section. Part of this group of documents is composed of two intra-agency memoranda and a routing slip prepared during the Criminal Division's final deliberations of their investigation. The remainder of the documents withheld under this exemption consists of, according to defendant, "approximately 15 pages of handwritten notes and working papers of Department of Justice attorneys," containing "the attorneys' summary of facts of the case including notations and observations intended for their personal use in analyzing the evidence and legal issues relative to the death investigation." [6]

Defendant maintains that these two groups of documents plainly fall within the protective scope of Exemption 5, as construed by the leading case of *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). The Court agrees.

In *Sears*, the Supreme Court construed Exemption 5 as embodying two discovery privileges relevant to the instant case: (1) the privilege for confidential intra-agency advisory opinions, and (2) the attorney work-product privilege. *Id.* at 149, 95 S.Ct. 1504. The first privilege does not apply to "final opinions" of an agency which embody its effective law and policy, but does require Exemption 5 protection of "all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law ought to be." *Id.* at 153, 95 S.Ct. at 1517. The intra-agency memoranda and routing slip in this case fall squarely within this protected category.

Plaintiffs attempt to argue, however, that the *Sears* case provides authority for the exclusion of documents from Exemption 5 protection under the instant circumstances. They view the Supreme Court's

---

**3.** The "obstruction of justice" file, originally considered by the defendant to be outside of the scope of plaintiffs' FOIA request and therefore of this action, has now been made available to plaintiffs with minor deletions (*i. e.*, of certain names) which they have not challenged. That file is therefore no longer contested and that portion of plaintiffs' motion for partial summary judgment which pertains to this file has become moot.

**4.** *See* note 3 *supra*. Plaintiffs have also been provided with copies of the FBI's portion of the "death investigation" file, leaving only the Criminal Division's "closing memoranda" portion of that file at issue.

**5.** The defendant's motion asks for summary judgment as to those documents which he continues to withhold, as well as with respect to the unchallenged sufficiency of the materials already transmitted.

**6.** Defendant's Memorandum at 17; *see* First Wilens Affidavit, para. 10(c).

decision in *Sears* as effectively holding that Exemption 5 does not immunize those memoranda of a law enforcement agency which conclude that no complaint should be filed. Their position is that the situation presented by the instant case is "precisely" the situation which existed with respect to that portion of the *Sears* documents which the Supreme Court held were not entitled to Exemption 5 protection as intra-agency advisory opinions.

Plaintiffs' argument, however, does not bear close scrutiny. In *Sears*, the Supreme Court held that Exemption 5 had been properly invoked with regard to some of the advisory memoranda in question but not as to others. 421 U.S. at 153–54, 95 S.Ct. 1504. This distinction was drawn as a direct result of the particular decision-making procedure of the agency (the NLRB) before it, which led to the Court's determination that all advisory memoranda recommending that no NLRB action be taken were "final" decisions and therefore not within the scope of Exemption 5. *See id.* at 148, 95 S.Ct. 1504; *see also* Davis, Administrative Law of the Seventies § 3A.21. Conversely, all advisory opinions recommending that a complaint be filed were considered not to be "final" by the Court and were found to thus enjoy Exemption 5 protection. *Id.* at 153–54, 158–59, 95 S.Ct. 1504.

Plaintiffs have apparently attempted to analogize the two situations, arguing that because no further legal action has yet been taken in the instant case, the documents in question here must be "final" opinions similar to the unexempted NLRB memoranda in *Sears*. The Court finds such a contention to have momentary superficial appeal, but in actuality to be wholly without merit.[7]

■ Defendant next contends that the 15 pages of attorney notes withheld from plaintiffs are properly exempt under the "work-product" portion of Exemption 5, relying four-square on *Sears*. There, the Supreme Court stated that ". . . the rule clearly applies to memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy." *Sears, supra,* at 154, 95 S.Ct. at 1518. Despite plaintiffs' unsupported contention that Exemption 5 protection "disappear[s] when no further legal action is in prospect,"[8] there can be no doubt but that the documents in question fall squarely within the protective scope of this portion of the exemption. *See id.* at 154, 95 S.Ct. 1504.

Plaintiffs readily demonstrate an awareness of the weakness of their position, however, because they hasten to make an alternative argument, one which presumes that both groups of documents are properly entitled to Exemption 5 protection. In their opposition to the defendant's motion for summary judgment, they argue that the defendant has a statutory obligation to segregate and produce any factual portions of these exempt documents. However this contention, although certainly not without some merit,[9] has not been fully argued by

---

**7.** The determinative factor, of course, is that notwithstanding the nature of the decision ultimately reached, the withheld documents contain "predecisional deliberative advice" properly exempted by the Act. *See Renegotiation Board v. Grumman Aircraft Engineering Corp.,* 421 U.S. 168, 186–88, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975); *see also Sears, supra,* 421 U.S. at 154 n.21, 95 S.Ct. 1504; *Association of Nat'l Advertisers, Inc. v. F.T.C.,* (No. 75–896) (D.D.C. August 27, 1976); *Project: Government Information and the Rights of Citizens,* 73 Mich.L. Rev. 971, 1074–75 (1975).

**8.** Plaintiffs' Opposition Memorandum at 3. Plaintiffs have cited no useful support for this bare contention. Their reliance upon the interpretation of *Sears* contained in the case of *Merrill v. Federal Open Market Committee,* 413

F.Supp. 494 (D.D.C.1976) is misplaced, inasmuch as that case involved documents found to be not part of a predecision deliberative process. *Id.* at 503.

**9.** The statute, as amended, now provides as follows:

Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.

5 U.S.C. § 552(b) (unnumbered paragraph). *See Schwartz v. IRS,* 167 U.S.App.D.C. 301, 511 F.2d 1303, 1305 (1975); *Morton-Norwich Products, Inc. v. Mathews,* 415 F.Supp. 78, 81–82 (D.D.C.1976).

the parties; the defendant has had no opportunity to brief this point of law or to take a detailed position as to whether such segregation is factually applicable to the documents in question. The Court therefore suggests that plaintiffs, if they wish to pursue this point properly in light of the Court's holding that these documents are indeed exempt, should file an appropriate motion with the Court within ten days of the date of this decision.

## II. The Exemption 7 Claim for the "Contamination" File

■ Exemption 7(A) of the FOIA, 5 U.S.C. § 552(b)(7)(A), exempts from mandatory disclosure matters which are:

> investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, . . .

Plaintiffs, in their motion to compel and for partial summary judgment on this issue, argue that the government's claim of a 7(A) exemption for the "contamination" file amounts to an attempt to "repeal" the 1974 amendment to Exemption 7. That amendment, they accurately point out, expressly overruled four decisions of the Court of Appeals for this Circuit [10] which had broadly construed § 552(b)(7) as automatically exempting all investigatory files, even those which were "closed." [11] As evidenced by the remarks of the late Senator Hart, there can be no question but that Congress intended the amendment to limit Exemption 7(A) protection to only those situations in which the disclosure of requested information could harm "a concrete prospective law enforcement proceeding." [12] Congress clearly wished to ensure that investigatory files would not remain exempt because of their character *as investigatory files* beyond the time that a possible prospective law enforcement action necessitated their nondisclosure. As the Second Circuit has stated:

> The cases that Exemption 7A was intended to overrule were for the most part *closed* investigative file cases. As the Attorney General's Memorandum on the 1974 Amendments points out:
>
> > Normally, clause (A) will apply only to investigatory records relating to law enforcement efforts which are still active or in prospect—sometimes administratively characterized as records in an "open" investigatory file. . . .

---

**10.** *See Center for National Policy Review on Race and Urban Issues v. Weinberger,* 163 U.S. App.D.C. 368, 502 F.2d 370 (1974); *Ditlow v. Brinegar,* 161 U.S.App.D.C. 154, 494 F.2d 1073, *cert. denied,* 419 U.S. 974, 95 S.Ct. 238, 42 L.Ed.2d 188 (1974); *Aspin v. Department of Defense,* 160 U.S.App.D.C. 231, 491 F.2d 24 (1973); *Weisberg v. Department of Justice,* 160 U.S.App.D.C. 71, 489 F.2d 1195 (1973).

The "purpose" of the amendment is readily discernible from its legislative history. *See, e. g.,* 120 Cong.Rec. S9336 (Remarks of Senators Kennedy and Hart) (daily ed. May 30, 1974).

**11.** *See* note 14 *infra.*

**12.** Senator Hart, the sponsor of the amendment, explained as follows when he introduced the legislation:

> Recently, the courts have interpreted the seventh exception to the Freedom of Information Act to be applied whenever an agency can show that the document is sought in an investigatory file compiled for law enforcement purposes—a stone wall at that point.
>
> That, we suggest, is not consistent with the intent of Congress when it passed this basic act in 1966. . . .
>
> Let me clarify the instances in which nondisclosure would obtain: First, where the production of a record would interfere with enforcement procedures. This would apply whenever the government's case in court—a *concrete prospective law enforcement proceeding*—would be harmed by the premature release of evidence or information not in the possession of known or potential defendants. This would apply also where the agency could show that the disclosure of the information would substantially harm such proceedings by impeding any necessary investigation before the proceeding. . . .

120 Cong.Rec. S9329 (Remarks of Senator Hart) (daily ed. May 30, 1974) (emphasis added).

*Title Guarantee Co. v. NLRB*, 534 F.2d 484, 492 (2nd Cir., 1976). *See also Sears, supra,* 421 U.S. at 163–64 & n.28, 95 S.Ct. 1504.

Thus far, every reported case applying the 7(A) exemption has construed it within the context of a pending labor or trade enforcement proceeding and the applicability of the exemption has invariably turned on whether disclosure would constitute sufficient harm to such a proceeding. Some courts have found sufficient harm to warrant the exemption. *See, e. g., Harvey's Wagon Wheel, Inc. v. NLRB*, 550 F.2d 1139 (9th Cir., 1976); *Au & Son, Inc. v. NLRB*, 538 F.2d 80 (3rd Cir., 1976); *Goodfriend Western Corp. v. Fuchs*, 535 F.2d 145, 147 (1st Cir. 1976); *Title Guarantee Co. v. NLRB*, 534 F.2d 484, 492 (2nd Cir. 1976); *Association of Nat'l Advertisers, Inc. v. F.T.C.*, No. 75–896 (D.D.C., August 27, 1976); *ITT Continental Baking v. F.T.C.*, 1976 Trade Cas. P60,968 (D.D.C.1976); *Marathon LeTourneau Co. v. NLRB*, 414 F.Supp. 1074, 1083 (S.D.Miss.1976); *Capital Cities Communications, Inc. v. NLRB*, 409 F.Supp. 971, 975–76 (N.D.Cal.1976); *Mylan v. NLRB*, 407 F.Supp. 1124 (W.D.Pa.1976); *Gifford-Hill & Co., Inc. v. F.T.C.*, 1976 Trade Cas. P60,674 (D.D.C.1976); *Climax Molybdenum Co. v. NLRB*, 407 F.Supp. 208, 209 (D.Colo.1975). Other courts have made determinations to the contrary. *See Poss v. NLRB*, 91 LRRM 2232 (D.Colo.1975);

*NLRB v. Hardeman Garment Corp.*, 406 F.Supp. 510, 514 (W.D.Tenn.1976); *Deering Milliken, Inc. v. Nash*, 90 LRRM 3138 (D.S.C.1975); *Title Guarantee Co. v. NLRB*, 407 F.Supp. 498, 504–05 (S.D.N.Y.1975), *rev'd*, 534 F.2d 484 (2nd Cir. 1976). It appears that no court has as yet had occasion to determine the exemption's applicability according to whether the harm of the disclosure requested would threaten a "concrete prospective law enforcement proceeding."

In the instant case, the Department of Justice has conducted an extensive investigation into the suspected commission of a federal crime.[13] The usual, expected outcome of such an investigation would be the apprehension and conviction of a perpetrator or perpetrators presently unknown. Although the defendant freely admits that the investigation is presently in a "dormant" stage in that all available investigative leads have been pursued and that the Department's limited financial resources preclude the current assignment of an investigative agent, the current investigation is nonetheless an "active" one which will hopefully lead to a "*prospective* law enforcement proceeding." In this way, it differs markedly from the cases which the 1974 Amendment was intended to overrule,[14] and presents the very real possi-

---

13. The "contamination" investigation was undertaken to determine whether, *inter alia*, there had been committed a violation of 42 U.S.C. § 2077 ("Unauthorized dealings in special nuclear material—handling by persons") in connection with the Silkwood affair. *See also* 42 U.S.C. § 2272. It involved the interviewing of numerous prospective witnesses and resulted in the Criminal Division's conclusion that a violation of Federal law had "probably" been committed. *See* Defendant's Memorandum at 11.

14. *See* note 12 *supra*. The precedential targets of the 1974 amendments, *see* note 10 *supra*, "had adopted a rather wooden, mechanical and overbroad interpretation of Exemption 7." *Capital Cities Communications, Inc. v. NLRB*, 409 F.Supp. 971, 975 (N.D.Cal.1976). They had uniformly applied an "automatic" exemption standard which exempted investigatory files

even "after the termination of investigation and enforcement proceedings." *Aspin v. Department of Defense*, 160 U.S.App.D.C. 231, 491 F.2d 24, 30 (1973). In fact, the prospect of a law enforcement proceeding need not necessarily have been "imminent or even likely, either at the time the material was amassed or at the time disclosure [was] sought under the FOIA." *Center for National Policy Review on Race and Urban Issues v. Weinberger*, 163 U.S.App.D.C. 368, 502 F.2d 370, 373 (1974). As further explained by the D.C. Circuit in that opinion:

In *Weisberg, supra*, we held that exemption 7 applied to material relating to the assassination of President Kennedy long after the prospect of prosecution had passed. In *Aspin v. Laird, supra*, note 1, we held the exemption applicable to a report that formed the basis for [My Lai] prosecutions that, with one exception had been concluded. . . . .

bility of a criminal learning in alarming detail of the government's investigation of his crime [15] before the government has had the opportunity to bring him to justice.

The Court does not believe that such a prospect was intended by Congress when it enacted the 1974 Amendment,[16] nor would it comport with the broad latitude of prosecutorial discretion traditionally accorded in similar cases. *See Weisberg v. Department of Justice*, 160 U.S.App.D.C. 71, 489 F.2d 1195, 1200–01 (1973); *Frankel v. S.E.C.*, 460 F.2d 813, 817–18 (2d Cir.), *cert. denied*, 409 U.S. 889, 93 S.Ct. 125, 34 L.Ed.2d 146 (1972). The Court therefore holds that disclosure of the investigatory file sought by plaintiffs would at this time [17] cause impermissible harm to a concrete prospective law enforcement proceeding and is within the protective scope of Exemption 7(A).

Accordingly, the Court finds that the plaintiffs' motions should be denied and that the defendants are entitled to summary judgment as to all issues save for the segregation matter heretofore discussed.

And in *Ditlow v. Brinegar, supra*, note 1, we held the exemption applicable to material amassed in connection with an enforcement proceeding that was merely "conceivable."

In the instant case, the possibility of prosecution is more than just "conceivable." Moreover, the Court finds that the likelihood of a presently unknown perpetrator learning of the government's case against him presents a circumstance far different from the circumstances of the cases which Congress sought to overrule.

15. It is noted, though the point need not be belabored, that the parties seeking access to

the withheld information are in the business of disseminating information to a national public audience. The wide publicity which they would presumably give the information, if obtained, although technically not pertinent to the applicability of the exemption, only underscores the harm threatened by disclosure.

16. *See* notes 10, 12, and 14 *supra* and accompanying text.

17. It is noted that the Statute of Limitations applicable to the federal violation in question has yet to expire. *See* 18 U.S.C. § 3282.