David L. BROCKWAY, Sr., Appellee,

v.

DEPARTMENT OF the AIR FORCE, Appellant.

No. 74–1268.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1975.

Decided June 6, 1975.

Thomas G. Wilson, Atty., Dept. of Justice, Civ. Div., Appellate Section, Washington, D. C., for appellant.

Richard P. Moore, Cedar Rapids, Iowa, for appellee.

Before MATTHES, Senior Circuit Judge, and ROSS and WEBSTER, Circuit Judges.

MATTHES, Senior Circuit Judge.

On this appeal by the Department of the Air Force we are required to review a district court order requiring the Air Force to make public all of a safety report on an airplane crash. The district court order and memorandum opinion, published at 370 F.Supp. 738 (N.D.Iowa 1974), were premised upon the Freedom of Information Act (FOIA), 5 U.S.C. § 552.

On February 24, 1972, Second Lieutenant David L. Brockway, Jr., of the United States Air Force was killed when his aircraft crashed during a training flight near England Air Force Base, in Louisiana. This appeal concerns the efforts by David L. Brockway, Sr., the lieutenant's father and the plaintiff-appellee in this action (hereinafter plaintiff), to utilize the Freedom of Information Act to gain access to statements by certain witnesses, all members of the Air Force, about the circumstances surrounding the crash. The statements are not sought for purposes of any pending or anticipated litigation. Rather, plaintiff seeks the statements solely for his personal enlightenment as to the cause of the crash in which his son was killed.

A short explanation of the nature of the information sought by the plaintiff in this action, and the manner in which that information was obtained by the Air Force, is necessary for an understanding of this appeal.

Shortly after the crash, the Air Force instituted certain investigative procedures established by Air Force regulations. In accordance with these regulations, two separate and independent investigations of the crash were undertaken. The one, called a collateral investigation, was made "to obtain and preserve all available evidence for use in claims, litigation, disciplinary action, and adverse administrative proceedings, and for all other purposes except for safety and accident prevention purposes." The other, characterized as an aircraft accident investigation (also called a safety investigation), was instituted "for the sole purpose of accident prevention." A.F.Reg. 110–14, ¶ 1.

There is a specific rationale for this dual investigation procedure. The Air Force believes that a witness may be reluctant to testify freely before the collateral investigation board for fear that his statement will reveal some negligence or misconduct on his part, thereby exposing himself to disciplinary action or other adverse consequences. To enable the Air Force to obtain from a witness all relevant information necessary to prevent further accidents of a similar

nature, the Air Force has established the safety investigation procedure as a proceeding wholly separate from the collateral investigation. The witness is requested to speak freely to the safety investigation board—more freely than he might speak to the collateral board—on the assurance that the information he imparts to the safety board will be kept confidential and will not be revealed to the collateral board or used for any purpose other than accident prevention. The Air Force asserts that the assurances of confidentiality do in fact encourage Air Force personnel to testify before the safety investigation board and that the safety investigation board procedure has contributed to the reduction in the frequency of accidents involving Air Force equipment.

Upon his request for the Air Force investigative files on the crash which resulted in his son's death, plaintiff was supplied part of the collateral report, although the Air Force withheld the opinions, conclusions, and recommendations of that report and medical reports on an instructor pilot also killed in the crash. After plaintiff brought this suit pursuant to the FOIA, the Air Force supplied him with the remainder of the collateral investigation report.

Upon learning of the existence of the safety investigation report, however, the plaintiff insisted that the safety report also be revealed. The Air Force granted plaintiff access to part of the safety report, but declined to disclose the remainder, which included a report by Cessna Aircraft Company in connection with the crash, the statements of various witnesses to the safety investigation board upon assurances of confidentiality, and material containing the opinions, recommendations, and conclusions of the safety board. In regard to the witness statements, the Air Force did furnish the plaintiff with the names and addresses of the witnesses whose statements were withheld and offered to allow each witness to review his own statement if he personally wished to reveal his testimony to the plaintiff. Pursuant to the FOIA, the plaintiff in this action sought to enjoin the withholding of the Cessna Aircraft report and the witness statements contained in the safety report files. Thus the district court was presented with the question whether the FOIA required the disclosure of the Cessna report and the statements of the witnesses.

The Freedom of Information Act, enacted in 1966 as an amendment to the Administrative Procedure Act of 1946, manifested Congress's belief that administrative agencies were improperly withholding from the public considerable information that should have been made available.[1] *See* H.Rep.No.1497, 89th Cong., 2d Sess. 5 (1966), U.S.Code Cong. & Admin.News 1966, p. 2418 [hereinafter H.Rep.]. Through the FOIA Congress sought to remedy this state of affairs. "It is the purpose of the [FOIA] . . . to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language and to provide a court procedure by which citizens and the press may obtain information wrongfully withheld." S.Rep.No.813, 89th Cong., 1st Sess. 3 (1965) [hereinafter S.Rep.]. *See generally* K. Davis, Administrative Law Treatise § 3A.4 (1970 Supp.); Note, *The Freedom of Information Act: A Seven-Year Assessment,* 74 Columbia L.Rev. 895–99 (1974). Specifically, subsection (c) of the Act, codified as 5 U.S.C. § 552(a)(3), provides in pertinent part that a government agency is required to make its records "promptly available to any person." There is no requirement in the Act that the person requesting the information or records show any need to obtain them. The same subsection as codified provides that a federal district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld . . ." Subsection (e) of the Act, codified as 5 U.S.C. § 552(b), lists nine exemptions to

---

1. The FOIA was amended in 1974, 88 Stat. 1561–64, but the 1974 revisions have no relevance to the issues on this appeal.

the broad requirement of subsection (c) that agency records and information be made public upon request. The fourth and fifth of these nine exemptions are the focus of this appeal, and are accordingly quoted in full here as codified at 5 U.S.C. § 552(b):

> (b) This section does not apply to matters that are—
>
> .    .    .    .    .
>
> (4) trade secrets and commercial or financial information obtained from a person and privileged and confidential;
>
> (5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency .  . . . .

The Air Force asserted to the district court that under Exemption 4 the Cessna report was exempt from disclosure as confidential commercial information. The district court accepted this argument, 370 F.Supp. at 740–41, and the plaintiff has not appealed this ruling. The Air Force also contended that the witness statements were exempt under Exemption 4, arguing that the exemption included nonfinancial confidential statements such as those given to the safety investigation board. The Air Force alternatively urged that the statements were intra-agency memoranda, immune from discovery in litigation by a qualified privilege, and therefore exempt under the fifth exemption of the Act.

The district court rejected both arguments of the Air Force on the immunity of the witness statements from disclosure, and ordered production of all but three of the statements.[2] The court ruled that the fourth exemption applies only to information obtained from persons outside the government and that the exemption did not exempt the witness statements in question from disclosure, since they were made by Air Force personnel.

Turning to the contention that the statements were exempt under the fifth exemption, the district court focused upon the provision of the exemption that disclosure would not be required as to information "which would not be available by law to a party  . . .  in litigation with the agency." The court reasoned from the discovery provisions of Fed.R.Civ.P. 26 that the witness statements could be discovered by a party in litigation with the agency.

At issue on this appeal is whether the witness statements fall within the scope of either the fourth exemption or the fifth exemption to the disclosure requirement of the FOIA.[3]

I

As noted above, the fourth exemption excludes from the mandate of disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." The district court ruled that this exemption applies only to information received by an agency from private individuals outside the government and that the witness statements in question here did not come within the scope of the exemption, since all the statements were by Air Force personnel. 370 F.Supp. at 741. There is authority supporting the court's holding, although the prior cases usually were phrased in the context of transferring general agency files from one govern-

---

2. The three statements were excluded from the production order because the district court found that they "contain only character and ability evaluations which are not discoverable and are thus excepted from disclosure by § 552(b)(5)." 370 F.Supp. at 742. Plaintiff has not contested the withholding of these three statements.

3. After it had filed notice of appeal, the Air Force moved that we remand the case for consideration of a Rule 60(b) motion to be filed in the district court. We retained jurisdiction, but on August 22, 1974, we remanded to the district court for the limited purpose of hearing the 60(b) motion. Subsequently, the Air Force presented new evidence to the district court in the form of affidavits by various Air Force officers asserting the negative repercussions on future safety investigations expected to flow from the disclosure of the witness statements. On January 28, 1975, the district court denied the 60(b) motion.

mental body to another, rather than in the context of an agency receiving a personal statement from an agency employee, as is the case here. *Grumman Aircraft Engineering Corp. v. Renegotiation Board,* 138 U.S.App.D.C. 147, 425 F.2d 578 (1970); *Consumers Union of United States, Inc. v. Veterans Administration,* 301 F.Supp. 796, 803 (S.D.N.Y.1969), *appeal dismissed as moot,* 436 F.2d 1363 (2d Cir. 1971); *Benson v. General Services Administration,* 289 F.Supp. 590, 594 (W.D.Wash.1968), *aff'd,* 415 F.2d 878 (9th Cir. 1969). *See also Soucie v. David,* 145 U.S.App.D.C. 144, 448 F.2d 1067, 1079n. 47 (1971); *Fisher v. Renegotiation Board,* 355 F.Supp. 1171 (D.D.C.1973). The rationale for this principle was expressed in the following manner in *Consumers Union of United States, Inc. v. Veterans Administration, supra,* 301 F.Supp. at 803:

> To include [information from government sources] would pervert the purpose of the Act for then commercial and financial information could be made secret simply by transferring records from one agency to another with a promise of confidentiality.

■ Nevertheless, we are constrained to observe that the language of Exemption 4 does not of itself establish such a distinction between information received from intra-governmental and extra-governmental sources, and the legislative history does not address directly the matter of such a distinction. *See generally* K. Davis, *supra,* § 3A.19, at 152–53. Moreover, the rationale for the distinction has been criticized for failing to take into account that there is judicial review of the reasonableness of any promise of confidentiality made by an agency. Note, *The Freedom of Information Act: A Seven-Year Assessment,* 74 Columbia L.Rev. 895, 952–53 (1974).

But the ruling of the district court that the statements are not within the scope of Exemption 4 may be upheld on another ground; namely, that, aside from trade secrets, the exemption immunizes from disclosure only confidential or privileged information which is commercial or financial in nature. The Air Force conceded at oral argument that the witness statements sought by the appellee in this action are not commercial or financial in nature. Nevertheless, the Air Force submits that Exemption 4 protects not only trade secrets and commercial or financial information, but also *any* information in its custody which is privileged or confidential.

But such a construction tortures the plain language of the exemption. It seems clear to us that the phrase "privileged or confidential" is intended to modify, albeit somewhat inartfully, the phrase "commercial or financial information" so as to limit the class of commercial or financial information which is immune from disclosure to that which is privileged or confidential. The courts which have considered this question are in near unanimous agreement with this construction: "The plain language of this section exempts only (1) trade secrets and (2) information which is (a) commercial or financial, (b) obtained from a person, and (c) privileged or confidential. The exemption . . . does not apply to information which does not satisfy the three requirements stated in the statute." *Consumers Union of United States, Inc. v. Veterans Administration, supra,* 301 F.Supp. at 802. *Accord, Getman v. N.L.R.B.,* 146 U.S.App. D.C. 209, 450 F.2d 670, 673 (1971); *Sears, Roebuck & Co. v. General Services Administration,* 384 F.Supp. 996, 1005 (D.D. C.1974); *Rabbitt v. Department of the Air Force,* 383 F.Supp. 1065, 1069 (S.D.N. Y.1974); *Tax Analysts and Advocates v. IRS,* 362 F.Supp. 1298, 1307 (D.D.C.1973), *modified in part on other grounds,* 505 F.2d 350 (D.C.Cir. 1974). *Barceloneta Shoe Corp. v. Compton,* 271 F.Supp. 591 (D.P.R.1967), the one reported decision suggesting to the contrary that any privileged or confidential information is protected from disclosure by Exemption 4, is not in our view based upon a careful analysis of the statute and has not been cited for that proposition by any other court.

In support of its asserted construction of Exemption 4, the Air Force relies pri-

marily upon the legislative history of the FOIA. In both the Senate and House reports on the bill which became the FOIA, there are passages intimating that Exemption 4 was intended to include within its scope the doctor-patient and lawyer-client privileges, which obviously are not limited to commercial or financial information, and further suggesting that any information given to the government in confidence, without regard to whether it was commercial or financial in character, would fall within the terms of the fourth exemption to the Act.[4] S.Rep. at 9; H.Rep. at 10, U.S. Code Cong. & Admin.News 1966, p. 2427.

The tendency has been to grant little weight to these passages from the reports on the theory that the passages were taken from previous congressional reports on an earlier draft of the Freedom of Information bill which did in fact exempt confidential non-commercial and non-financial matters. *See Consumers Union of United States, Inc. v. Veterans Administration, supra,* 301 F.Supp. at 802; K. Davis, *supra,* § 3A.19; Katz, *The Games Bureaucrats Play: Hide and Seek Under the Freedom of Information Act,* 48 Texas L.Rev. 1261, 1265–67 (1970).

In any event, we are not inclined to subordinate the unambiguous language of the statute to clearly contradictory legislative history. To hold otherwise would be to undermine the principle that enacted legislation should be generally considered the final and authoritative expression of the will of Congress on a matter. *See* K. Davis, *supra,* § 3A.31; *cf.* 2A C. Sands, Sutherland Statutory Construction §§ 48.02, 48.06 (4th ed. 1973). "Although the congressional reports on [the FOIA] say that information not commercial or financial in nature is exempted, this court is required to follow the words of the Congress." *Consumers Union of United States, Inc. v. Veterans Administration, supra,* 301 F.Supp. at 802.

■ Since the witness statements in question here are not trade secrets and are not commercial or financial in nature, we accordingly hold that the statements are not exempt by § 552(b)(4) from the disclosure requirement of the FOIA.

## II

We come now to the more difficult question of whether the witness statements are within the scope of 5 U.S.C. § 552(b)(5), which exempts from disclosure under the FOIA documents that are "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." The district court held that the statements in question did not qualify for protection under Exemption 5, ruling in effect that the statements would be "available by law" to the plaintiff in litigation. The Air Force urges on this appeal that the statements would not be discoverable by a party in litigation, since the statements would be immune to discovery by a qualified executive privilege.

In Exemption 5 Congress did not seek to define precisely what kinds of agency memoranda were protected from the general disclosure mandate of the FOIA, but rather adopted as the scope of Exemption 5 the parameters of the general rules of discovery: "Exemption 5 incorporates the privileges which the Government enjoys under the relevant statutory and case law in the pretrial discovery context . . . ." *Renegotiation*

---

4. Thus the House Report observes at 10, U.S. Code Cong. & Admin.News 1966, p. 2427:

    It [Exemption 4] exempts such material if it would not customarily be made public by the person from whom it was obtained by the Government. . . . It would include information customarily subject to the doctor-patient, lawyer-client, or lender-borrower privileges such as technical or financial data submitted by an applicant to a Government lending or loan guarantee agency. It would also include information which is given to an agency in confidence, since a citizen must be able to confide in his Government. Moreover, where the Government has obligated itself in good faith not to disclose documents or information which it receives, it should be able to honor such obligations.

*Board v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 184 (1975), 95 S.Ct. 1491, 44 L.Ed.2d 57.

In defining the scope of Exemption 5, most courts have held that the exemption generally operates to protect "internal communications consisting of advice, recommendations, opinions, and other material reflecting deliberative or policy-making processes, but not purely factual or investigatory reports." *Soucie v. David*, 145 U.S.App.D.C. 144, 448 F.2d 1067, 1077 (1971). *Accord, e.g., EPA v. Mink*, 410 U.S. 73, 85–91, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); *Tennessean Newspapers, Inc. v. FHA*, 464 F.2d 657, 660 (6th Cir. 1972); *Bristol-Myers Co. v. FTC*, 424 F.2d 935, 939 (D.C.Cir. 1970); *Philadelphia Newspapers, Inc. v. Department of HUD*, 343 F.Supp. 1176, 1178 (E.D.Pa. 1972); *M. A. Schapiro & Co. v. SEC*, 339 F.Supp. 467, 470 (D.D.C. 1972); *Consumers Union of United States, Inc. v. Veterans Administration, supra*, 301 F.Supp. at 804–05.

Relying upon these cases, plaintiff contends that Exemption 5 protects from disclosure only memoranda which are deliberative in nature, and that no other standard is permissible in any instance for determining if a document comes within the scope of Exemption 5. We do not agree.

In construing Exemption 5 as protecting policy-making and deliberative memoranda, courts generally have relied upon two sources for guidance. *See generally* Comment, *Developments Under the Freedom of Information Act—1973*, 1974

Duke L.J. 251, 266–69; Note, *The Freedom of Information Act and the Exemption for Intra-Agency Memoranda*, 86 Harv.L.Rev. 1047, 1049–50 (1973).

First they have cited certain language from the Senate Report on the Act, language which numerous courts have suggested reflects an intent of Congress to limit the fifth exemption to protection of material of a deliberative or policy-making nature.[5] The House Report, however, is not as explicit in limiting Exemption 5 to only legal and policy matters, and seems rather to focus on whether the material would be available to a party in general discovery proceedings. H.Rep. at 10, U.S.Code Cong. & Admin.News 1966, p. 2427. Professor Davis has noted in his treatise, "The exemption clearly serves that purpose [of protecting policy and agency memoranda], but the implication that the exemption does not go beyond that is unsound. It clearly reaches memorandums or letters which have nothing to do with the process of arriving at positions." K. Davis, *supra*, § 3A.21, at 157.

Focusing upon the language of the exemption that disclosure under the FOIA will be denied if the material "would not be available by law to a party . . . in litigation," courts construing Exemption 5 have used as a second source of guidance those non-FOIA cases construing the general scope of a governmental or executive privilege from discovery of policy memoranda sought under Fed.R. Civ.P. 26.[6] Specifically, courts have

---

**5.** The relevant passage states:

Exemption No. 5 relates to "inter-agency or intra-agency memorandums or letters which would not be available by law to a private party in litigation with the agency." It was pointed out in the comments of many of the agencies that it would be impossible to have any frank discussion of legal or policy matters in writing if all such writings were to be subjected to public scrutiny. It was argued, and with merit, that efficiency of Government would be greatly hampered if, with respect to legal and policy matters, all Government agencies were prematurely forced to "operate in a fishbowl." The committee is convinced of the merits of this gen-

eral proposition, but it has attempted to delimit the exception as narrow as consistent with efficient Government operation. S.Rep. at 9.

**6.** Rule 26(b)(1) provides in part:

(1) *In General.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . .

Rule 34(a) provides for the discovery of documents and other writings "which constitute or contain matters within the scope of Rule 26(b)."

The new Federal Rules of Evidence, effective July 1, 1975, provide no enlightenment on the

defined the scope of Exemption 5 as corresponding to the rule in certain general discovery cases that a privilege "obtains with respect to intra-governmental documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena,* 40 F.R.D. 318, 324 (D.D.C. 1966), *aff'd,* 128 U.S.App.D.C. 10, 384 F.2d 979, *cert. denied,* 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967). *See also Kaiser Alum. & Chem. Corp. v. United States,* 157 F.Supp. 939, 946, 141 Ct.Cl. 38 (1958). But the cases such as *Carl Zeiss Stiftung* and *Kaiser Aluminum* do not stand for the proposition that the protection of governmental policy documents is the sole facet of the executive privilege from discovery.

In fact, the Air Force cites us to case authority recognizing that there is a qualified executive privilege in pre-trial discovery for witness statements given in a military aircraft safety investigation such as the present one, even though such statements are not policy documents. The Air Force thus argues that, in light of this governmental privilege in general discovery proceedings for witness statements, the statements in question would "not be available by law to a party . . . in litigation," and that therefore Exemption 5 bars plaintiff from obtaining disclosure of the statements under the FOIA.

The leading case on the executive privilege for the witness statements is *Machin v. Zuckert,* 114 U.S.App.D.C. 335, 316 F.2d 336, *cert. denied,* 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 124 (1963). *Machin* involved almost precisely the same issue under the law of pre-trial discovery as has been raised on this appeal under the FOIA. The appellant in *Machin* was seeking discovery of an Air Force investigation report of an airplane crash, ap-

parently for litigation with a party other than the government. The appellant sought discovery of, among other items, certain witness statements made to Air Force investigators by employees of aviation corporations upon assurances of confidentiality and the factual findings of Air Force mechanics who inspected the wreckage. The court of appeals ordered the factual findings of the mechanics disclosed, and the case has been frequently cited for the proposition that documents factual in nature generally are not privileged, while policy documents usually are privileged. But the court also held that the witness statements of the aviation industry employees were privileged from discovery. The Air Force had argued to the court that if the industry employees were not given assurances that their statements would remain confidential, the Air Force would not receive the full details from the employees, who might hold back certain information if they believed it could be used against their employer. Without such information, the Air Force had argued, it would have difficulty ascertaining what steps needed to be undertaken to make the aircraft and equipment safer. The court accepted this reasoning:

> We agree with the Government that when disclosure of investigative reports obtained in large part through promises of confidentiality would hamper the efficient operation of an important Government program and perhaps even, as the Secretary here claims, impair the national security by weakening a branch of the military, the reports should be considered privileged.

316 F.2d at 339.

■ This particular holding of the *Machin* court has been recognized by several treatises. *See* McCormick on Evidence § 108, at 230n. 6 (2d ed. 1972); 8 C. Wright & A. Miller, Federal Prac. &

---

extent of any governmental privilege to preclude discovery of certain documents. Fed.R. Evid. 501 simply provides that "the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

Proced. § 2019, at 169n. 22 (1970). To be sure, in some cases a qualified executive privilege for such witness statements has been questioned or even rejected under varying fact circumstances. *See Reynolds v. United States,* 192 F.2d 987, 994–95 (3d Cir. 1951), *rev'd on other grounds,* 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953); *McFadden v. Avco Corp.,* 278 F.Supp. 57 (M.D.Ala.1967); *O'Keefe v. Boeing Co.,* 38 F.R.D. 329 (S.D.N.Y.1965). But to some extent these cases are probably a manifestation of the character of this *Machin* privilege as a qualified privilege which in a specific discovery proceeding may be overcome by an adequate showing of exceptional circumstances justifying discovery.[7] On the other hand, the *Machin* rationale on the existence of a qualified executive privilege for witness statements in safety investigations given upon a promise of confidentiality has been recognized elsewhere. *See Cooney v. Sun Shipbuilding & Drydock Co.,* 288 F.Supp. 708, 714–15 (E.D.Pa.1968); *cf. United Air Lines, Inc. v. United States,* 26 F.R.D. 213, 219 & n. 9 (D.Del.1960). *See also* 49 Virginia L.Rev. 1025, 1029 (1963).

■ Thus we are not persuaded by plaintiff's argument that these witness statements cannot be considered within the scope of Exemption 5 since they are not policy memoranda. The language of Exemption 5 makes no distinction between memoranda which are deliberative and those which are factual in nature, but rather speaks only in terms of whether the material sought under the FOIA "would not be available by law to a party" in general discovery proceedings. As the Air Force has shown, there is authority indicating that an executive privilege exists justifying "by law" the nondiscovery of these witness statements. We have already noted above that the legislative history and the line of cases such as *Carl Zeiss Stiftung* need not necessarily be the sole standards for determining the propriety of a claim of rightful nondisclosure under that exemption.

Moreover, we believe that, "In the case at bar this factual versus deliberative distinction is inadequate to resolve the difficult question whether [this material] should be exempt from disclosure." *Montrose Chemical Corp. v. Train,* 160 U.S.App.D.C. 270, 491 F.2d 63, 67 (1974). In determining whether these witness statements should be protected by Exemption 5, we believe it is more appropriate to view the claim of governmental or executive privilege from the perspective of the purposes and goals of the FOIA and this specific exemption. One commentator has characterized the

---

7. The court below in the present case sought to justify the disclosure of the witness statements under the FOIA by suggesting that the plaintiff had shown a substantial need for the statements which outweighed any qualified privilege which could be asserted by the Air Force. But the use of the indefinite article in Exemption 5 (i. e., "would not be available by law to *a* party . . .") indicates that the scope of Exemption 5 is to be determined without regard to the particular circumstances or needs of any specific actual or hypothetical party. The test is whether the memoranda would "routinely be disclosed" in private litigation. H.Rep. at 10, U.S.Code Cong. & Admin.News 1966, p. 2427. *See NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 n.16 (1975); *Sterling Drug Inc. v. FTC,* 146 U.S.App.D.C. 237, 450 F.2d 698, 704–05 (D.C.Cir. 1971); K. Davis, *supra,* § 3A.21, at 157–58. Obviously, given the existence of the *Machin* privilege, these witness statements would not routinely be disclosed in private litigation, but rather only upon an adequate showing of exceptional circumstances.

Moreover, even assuming *arguendo* that the specific circumstances of the plaintiff are to be considered in determining whether these statements fall within Exemption 5, we question whether plaintiff has in fact shown a substantial need for the statements, since there is no indication on the record that plaintiff seeks the material for use in any present or anticipated litigation. Nevertheless, if the plaintiff at any time in the future should require the witness statements for use in private litigation and can make a showing sufficient to overcome any qualified governmental privilege, then plaintiff may still obtain the statements, although in Rule 26 discovery proceedings ancillary to the private litigation rather than under the FOIA.

policies of the Act as: "(1) the dissemination of useful information to the public—both in order to satisfy the needs of individuals for the information and in order to instill a sense of responsibility in the agency that realizes it can no longer hide its mistakes—and (2) the protection from inhibition of the free flow of information and free discussion within the agency." Note, *The Freedom of Information Act and the Exemption for Intra-Agency Memoranda*, 86 Harv. L.Rev. 1047, 1052–53 (1973).

Viewed in light of these two policies, it is clear that the latter policy will be thwarted by the disclosure of these witness statements. As the same commentator observes:

> A number of cases have suggested in this context [of Exemption 5] that deliberative and policy-making communications within an agency are uniquely important [citing, *e. g.*, Soucie v. David, *supra*, 448 F.2d at 1077]. This judgment would support the distinction that has been interpreted as based on the recommendatory nature of the information. The judgment is, however, erroneous. It is equally essential to the processes of an agency that there be a free flow of factual information, including adverse factual information, since the deliberative process is meaningful only if based upon an adequate factual foundation.

Note, *supra*, 86 Harv.L.Rev. at 1054–55. *Cf. National Parks & Conservation Ass'n v. Morton,* 162 U.S.App.D.C. 223, 498 F.2d 765, 767 (1974). In addition, this case represents one of the rare instances when the nondisclosure of the witness statements will have no great bearing on the first of the two policies of the FOIA enumerated above. The future needs of individuals for information will not be satisfied by the disclosure of these statements, for without the assurances of confidentiality the information probably would not come to light at all and would be lost not only to any individual seeking the information, but also to the Air Force seeking improvement in safety procedures. Moreover, the idea that disclosure will encourage a sense of responsibility in the agency on the theory that it knows it will not be able to hide its mistakes is hardly appropriate here: the whole purpose of the privilege is to allow the Air Force to learn of possible agency or personnel errors otherwise unknown to it.

Consequently, we believe that the purposes of the FOIA and of the fifth exemption are best carried out by holding that these witness statements are protected from disclosure by Exemption 5. We believe that this holding complements the basic policy underlying cases such as *Carl Zeiss Stiftung* which have recognized in discovery proceedings a governmental privilege for policy memoranda of the agencies. Indeed, in speaking of the policy memoranda privilege, the Supreme Court has noted that, "Manifestly, the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions." *NLRB v. Sears, Roebuck & Co., supra,* 421 U.S. at 151, 95 S.Ct. at 1516. Our decision today is in conformity with that purpose.

Recently, the United States Court of Appeals for the District of Columbia Circuit also recognized that the strict fact-deliberation criterion may be inappropriate in some instances for determining whether a document should be exempted from disclosure by this fifth exemption. In *Montrose Chemical Corp. v. Train, supra,* Montrose sought under the FOIA two fact summaries prepared for the Administrator of the EPA by aides to the Administrator and based upon the 9200-page record of certain EPA proceedings. Although the reports were essentially compendia of facts, the court held that the summaries were exempt from disclosure by Exemption 5. In reaching that result, the court stated:

> Our solution rests on the interpretation of the purpose of exemption 5. If the exemption is intended to protect only deliberative materials, then a factual summary of evidence on the

record would not be exempt from disclosure. But if the exemption is to be interpreted to protect the agency's *deliberative process*, then a factual summary prepared to aid an administrator in the resolution of a difficult, complex question would be within the scope of the exemption.

491 F.2d at 68 (emphasis in original). The court concluded that the exemption was intended to protect the deliberative process, and that the factual summaries sought in that case reflected that deliberative process of the EPA to such an extent that they should be exempt from disclosure.

On the narrow facts of this case we believe that the deliberative processes of the Air Force in establishing appropriate safety policies will be best protected by permitting these witness statements to be exempted from disclosure. If the statements are disclosed and the flow of information to the Air Force safety investigation boards is curtailed, there is the definite possibility that the deliberative processes of the Air Force will be hampered and the efficiency of a specific administrative program reduced.[8] As the Supreme Court appropriately noted in a somewhat different context:

It appears to us that Exemption 5 contemplates that the public's access to

internal memoranda will be governed by the same flexible, commonsense approach that has long governed private parties' discovery of such documents involved in litigation with Government agencies. And, as noted, that approach extended and continues to extend to the discovery of purely factual material appearing in those documents in a form that is severable without compromising the private remainder of the documents.

*EPA v. Mink, supra,* 410 U.S. at 91, 93 S.Ct. at 838.

By our holding in this case we do not mean to imply that we are rejecting the general fact-deliberation criterion established in the decisions of other courts. Rather, we hold that on the narrow facts presented here, specifically involving statements by witnesses to Air Force safety investigators upon assurances of confidentiality, common sense as reflected in the general law of discovery, *see, e. g., Machin v. Zuckert, supra,* indicates disclosure of these statements would defeat rather than further the purposes of the FOIA and is not required by the language of the FOIA itself.

For reasons stated in Division II of this opinion the judgment of the district court is reversed.

---

**8.** Thus in one uncontradicted affidavit submitted to the district court, Richard F. Gerwig, Chief of the Reporting and Documents Division with 22 years experience in reviewing Air Force accident reports, averred:

> During my tenure I have reviewed many accident reports wherein personnel were reluctant to testify because of fear of self-incrimination. This fear is usually lessened by the promise that all statements furnished to the safety accident board will be held in confidence and that the accident report will not

be used in any way except for safety and accident prevention purposes . . . .
Air Force pilots have informed me they will not testify before a safety investigation board unless they are granted assurance that the information in the entire report will not be used against them. Recently, two Air Force personnel involved in an explosives accident (which formerly was privileged) have refused to testify in a safety investigation because of fear of litigation or disciplinary action.