**The TITLE GUARANTEE COMPANY, a Subsidiary of Pioneer National Title Insurance Company, a Subsidiary of Title Insurance and Trust Company, a Subsidiary of the TI Corporation (of California), Plaintiff,**

v.

**NATIONAL LABOR RELATIONS BOARD, Defendant.**

**No. 75 Civ. 3828.**

United States District Court, S. D. New York.

Oct. 10, 1975.

On Motion for Stay Nov. 28, 1975.

Jackson, Lewis, Schnitzler & Krupman, New York City, for plaintiff; Robert Lewis, Roger S. Kaplan, New York City, of counsel.

Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Abigail Cooley, Asst. Gen. Counsel for Special Litigation, Washington, D. C., co-counsel, Joseph P. Norelli, Washington, D. C. and Winifred D. Morio, Regional Atty., Region 2, N.L.R.B., New York City, of counsel., for defendant.

## OPINION

GAGLIARDI, District Judge.

### I

By this action, the Title Guarantee Company ("Title Guarantee") seeks to compel the National Labor Relations Board (the "Board" or "N.L.R.B.") to produce for inspection and copying, pursuant to the Freedom of Information Act, as amended (the "Act"), 5 U.S.C. § 552, certain materials relating to an unfair labor practice charge against Title Guarantee. Plaintiff also seeks preliminary relief restraining the Board from conducting its administrative hearings until the issues herein have been resolved and, should disclosure be ordered, a stay of the administrative proceedings until a reasonable time after such disclosure.

The defendant has moved to dismiss the complaint for failure to state a claim upon which relief can be granted, Fed.R. Civ.P. 12(b)(6), or, in the alternative, for summary judgment under Fed.R.Civ.P. 56(c). According to the Board, the district court is without jurisdiction to enjoin the administrative proceedings and the material is exempt from disclosure under the Act. Title Guarantee has cross-moved for summary judgment.

Counsel for both sides have agreed that there is no material issue of fact in this case. Briefly stated, the factual background is as follows: On May 28, 1975, District 65, Wholesale, Retail, Office and Processing Union, Distributive Workers of America (the "Union"), filed an unfair labor practice charge with the Regional Office of the N.L.R.B. in New York alleging that Title Guarantee had refused to bargain with the Union. National Labor Relations Act §§ 8(a)(1), (3), 29 U.S.C. §§ 158(a)(1), (3). Amended charges were filed alleging, in addition, refusal to bargain in violation of § 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5). On June 30, 1975, after investigation by the Regional Office, the Regional Director issued a complaint charging violations as alleged by the Union. Hearings were ultimately set for October 14, 1975.

In July, 1975, Title Guarantee requested that "copies of all written statements, signed or unsigned, contained in the Board's case file . . . be made available for inspection and copying" and that "any such statements taken subsequently also be made available." Primarily, Title Guarantee is interested in receiving written reports or signed affidavits which resulted from Board interviews of witnesses offered by the charging party. See N.L.R.B. Field Manual §§ 10056.2, 10056.5; 29 C.F.R. § 101.4. The Regional Director denied the request citing Exemptions 5 and 7(A), 7(C), and 7(D) of the Act, 5 U.S.C. § 552(b)(5), 7(A), 7(C), 7(D). On August 1, 1975 the General Counsel of the Board denied Title Guarantee's appeal for substantially the same reasons cited by the Regional Director. The instant action was then instituted and *in camera* inspection of the material in question was conducted by the court. 5 U.S.C. § 552(a)(4)(B).

### II

At the outset, it is important to determine the jurisdictional aspects of this matter. As noted, plaintiff seeks both an order compelling disclosure and an injunction barring any administrative hearings until disclosure is made. With

respect to the request to compel disclosure, it is unassailable that this court has jurisdiction at this time to order the production of documents under the Freedom of Information Act. 5 U.S.C. § 552(a)(4) provides that:

> [o]n complaint, the district court . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.

As the Court held in a similar situation in *Cessna Aircraft Co. v. N.L.R.B.*, 405 F.Supp. 1042, 1046 (D.Kan.1975):

> this is not an action to review decisions of the Board regarding discovery matters which may or may not arise during the hearing in controversy now before that Board. This is a separate and distinct action to enforce provisions of the Freedom of Information Act, whose benefits are available "to any person". The Board cannot seriously contend that it is somehow exempt from provisions of the Act, or that its internal rules and regulations regarding discovery may apply to nullify provisions of that Act, or that plaintiff here, simply because it is engaged in litigation before the Board, is relegated to lesser status than general members of the public who may seek information pursuant to provisions of the Act.

This court concludes, therefore, that it has jurisdiction to entertain plaintiff's action to order the agency to produce the material in question.

With regard to the court's injunctive powers, the N.L.R.B., cites *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974), and *Sears, Roebuck & Co. v. N.L.R.B.*, 153 U.S.App.D.C. 380, 473 F.2d 91 (1972), *cert. denied*, 415 U.S. 950, 94 S.Ct. 1474, 39 L.Ed.2d 566 (1974) for the proposition that the "Freedom of Information Act does not empower this court to enjoin Board proceedings." This reliance is misplaced. In *Bannercraft*, the Supreme Court wrote that

> [w]ith the express vesting of equitable jurisdiction in the district court by § 552(a), there is little to suggest, despite the Act's primary purpose, that Congress sought to limit the inherent powers of an equity court.

415 U.S. at 20, 94 S.Ct. at 1038. What *Bannercraft* held was that, although the Court believed that the district court had jurisdiction to enjoin an administrative proceeding, in "a *renegotiation* case," the "nature of the . . . process" was such that plaintiff would not suffer irreparable harm if negotiations continued pending resolution of the Freedom of Information claim. 415 U.S. at 20, 94 S.Ct. at 1028 (emphasis original).

Similarly, in *Sears*, contrary to defendant's interpretation, the District of Columbia Circuit noted that

> the District Court was correct in its premise that there is jurisdiction to enjoin agency proceedings pending resolution of a Freedom of Information Act claim.

473 F.2d at 93. The Court held only that under the peculiar circumstances of that case, the Board having issued a complaint at Sears' own request, Sears had made no showing of irreparable harm.

In the instant case, "with the express vesting of equitable jurisdiction in the district court" by the Act, *Bannercraft, supra*, this court holds that it has jurisdiction to enjoin the Board's proceedings.

### III

■ Turning to the merits, Exemption 5, which is relied upon by the defendant, covers "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). According to the Board, the scope of this exemption is parallel to that of the privilege doctrine in the civil discovery context. Thus, it claims, the material in question here is not subject to disclosure as it falls within the purview of the "government's executive privilege," *see E.P.A. v. Mink*, 410 U.S. 73, 86, 93 S.Ct.

827, 35 L.Ed.2d 119 (1973), and the "attorney work-product privilege," *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

Defendant's contentions are supported by broad language in the recent decision of *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). There, the Court was concerned with certain memoranda prepared by the Office of the General Counsel of the N.L.R.B. explaining decisions of that agency to file or not to file a complaint after unfair labor practice charges had been lodged with the Board by a union or employer. The Court held that decisions not to file a complaint were "final opinions" and therefore not exempt under Exemption 5 of the Act. On the other hand, decisions to file a complaint only commenced the litigation process and were exempt.

In the course of its decision, the Court took the opportunity to review much of the background and policy of Exemption 5. The Court noted that:

> Exemption 5 withholds from a member of the public documents which a private party could not discover in litigation with the agency. *EPA v. Mink*, 410 U.S. at 85–86 [93 S.Ct. 827 at 835–836]. Since virtually any document not privileged may be discovered by the appropriate litigant, if it is relevant to his litigation; and since the Act clearly intended to give any member of the public as much right to disclosure as one with a special interest therein, . . . it is reasonable to construe Exemption 5 to exempt those documents, and only those documents, normally privileged in the civil discovery context.

421 U.S. at 148–49, 95 S.Ct. at 1515 (citations omitted). More specifically, the Court wrote that "it is clear" "that Congress had the Government's executive privilege specifically in mind in adopting Exemption 5," *Id.* at 150, 95 S.Ct. at 1516, and "that it is equally clear that Congress had the attorney work product privilege specifically in mind when it adopted (this) Exemption . . . ," *Id.* at 154, 95 S.Ct. at 1518.

This court does not believe that *N.L.R.B. v. Sears* is dispositive of the issue at hand. In *Sears*, as noted, the subject matter in question included memoranda designed to circulate among the various departments of the National Labor Relations Board. These memoranda clearly fell within the category envisioned by Congress through its use of the phrase "inter-agency or intra-agency memorandums or letters." The issue before the Court was the scope of the exemption accorded to this category of materials. Phrased in terms of the statute, the issue was the meaning of the second phrase of Exemption 5—"which would not be available by law to a party other than an agency in litigation with the agency." It was for the purpose of this latter inquiry that the Court looked to the civil discovery rules as analogous guidance.

In the case at bar, however, the material requested consists solely of statements made in support of the Union's charges. *See* 29 C.F.R. § 101.4. This material does not fall within the scope of the "memorandums or letters" exemption of Exemption 5. Whatever broad language exists in *Sears* or other cases, e. g., *E.P.A. v. Mink, supra*, equating Exemption 5 to civil discovery privileges was enunciated in the context of "inter-agency or intra-agency memorandums or letters" or "memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy." *Sears, supra* at 154, 95 S.Ct. at 1518. This court does not believe that such statements should be applied to carry Exemption 5 to the type of witness statements in question here.

This decision is not based on a purely mechanical interpretation of the statutory language. The cases have uniformly held that Exemption 5 is not to be construed to include documents consisting essentially of factual material. As the Supreme Court wrote in *E.P.A. v. Mink, supra*, 410 U.S. at 89, 93 S.Ct. at 837:

[v]irtually all of the courts that have thus far applied Exemption 5 have recognized that it requires different treatment for materials reflecting deliberative or policy-making processes on the one hand, and purely factual, investigative matters on the other.

Or, as the District of Columbia Circuit has said, the exemption covers

internal communications consisting of advice, recommendations, opinions, and other material reflecting deliberative or policy-making processes, but not purely factual or investigatory reports.

*Soucie v. David*, 145 U.S.App.D.C. 144, 448 F.2d 1067, 1077 (1971). *See also Tennessean Newspapers, Inc. v. F.H.A.*, 464 F.2d 657, 660 (6th Cir. 1972); *Bristol-Myers Co. v. F.T.C.*, 138 U.S.App.D.C. 22, 424 F.2d 935, 939 (1970); *Philadelphia Newspapers, Inc. v. Department of H.U.D.*, 343 F.Supp. 1176, 1178 (E.D.Pa. 1972); *M. A. Schapiro & Co. v. S.E.C.*, 339 F.Supp. 467, 470 (D.D.C.1972); *Consumers Union of United States, Inc. v. Veterans Administration*, 301 F.Supp. 796, 803 (S.D.N.Y.1969).

This distinction is firmly rooted in the legislative history and policy of the Freedom of Information Act. In explaining the exemption, the Senate Committee wrote that it was in response to comments which pointed out that "it would be impossible to have any frank discussion of legal or policy matters in writing if all such writings were to be subjected to public scrutiny." S.Rep.No.813 on S. 1160, 89th Cong., 1st Sess. (1965). Similarly, the House Report considered the policy of the exemption as being to eliminate the inhibition of a free and frank exchange of opinions and recommendations among government personnel which could result from routine disclosure of their internal communications. H.R.Rep.No.1497, 89th Cong., 2d Sess., at 10 (1966). *See also Ackerley v. Ley*, 137 U.S.App.D.C. 133, 420 F.2d 1336, 1341 (1969). These considerations are not present ·in the instant situation.

*Brockway v. Department of the Air Force*, 518 F.2d 1184 (8th Cir. 1975) which disapproved of the emphasis on the deliberative nature of a document in determining the application of Exemption 5 to such a document does not require a contrary result. *Brockway* dealt with statements of Air Force personnel concerning an accident involving the Department's aircraft. In that case the statements, although factual in nature, were of use in the Department's future planning. Consequently, the Eighth Circuit held that:

[o]n the narrow facts of this case we believe that the deliberative processes of the Air Force in establishing appropriate safety policies will be best protected by permitting these witness statements to be exempted from disclosure.

*Id.* at 1194.

For these reasons, this court holds that Exemption 5 does not cover the statements of witnesses taken by the Board in connection with the unfair labor practice charge against Title Guarantee.

## IV

The defendant also relies on Exemptions 7(A), 7(C) and 7(D) which provide that the Act does not apply to "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would:

(A) interfere with enforcement proceedings  .   .   .

(C) constitute an unwarranted invasion of personal privacy, (or)

(D) disclose the identity of a confidential source  .   .   ."

5 U.S.C. § 552(b)(7)(A), 7(C), 7(D).

In discussing the application of this exemption to the instant case, it will be helpful to review the history of the investigatory materials exemption. As originally enacted this provision exempted

investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency.

5 U.S.C. § 552(b)(7) (1967). The legislative history of this broad language indi-

cates—and plaintiff appears to concede this—that under the original version of Exemption 7, virtually any material compiled in the course of an investigation would be withheld from disclosure. H.R. Rep.No.1497, 89th Cong., 2d Sess. 11 (1966); S.Rep.No.813, 89th Cong., 1st Sess. 9 (1965). Thus, in *Wellman Industries Inc. v. N.L.R.B.*, 490 F.2d 427 (4th Cir. 1974), the Court held that affidavits obtained by an N.L.R.B. investigator during his inquiry into Union objections to a representation election were not discoverable under the Act as the Exemption was designed to "prevent premature disclosure of an investigation so that the Board can present its strongest case . . ." *Id.* at 431 citing *Wellford v. Hardin*, 444 F.2d 21 (4th Cir. 1971). *See also Barceloneta Shoe Corp. v. Compton*, 271 F.Supp. 591 (D.P.R.1970); *Clement Bros., Inc. v. N.L.R.B.*, 282 F.Supp. 540 (N.D.Ga.1968).

In 1974, however, the Act was amended, substantially changing the provisions of Exemption 7. Defendant, itself, concedes that the purpose of the amendments, as evidenced by the legislative history, was to limit the exemption to instances where disclosure would interfere with one of a specific set of interests. The amendment requires that the government "specify some harm in order to claim the exemption" and does not "afford . . . all law enforcement matters a blanket exemption." 120 Cong.Rec. H10868 (Remarks of Congressman Reed of New York) (daily ed. Nov. 20, 1974). In enacting the amended exception, the Congress was concerned with the sweeping exemptions afforded by some court decisions, *see e. g., Center for National Policy Review v. Weinberger*, 163 U.S.App.D.C. 368, 502 F.2d 370 (1974), and saw the amended exemption as narrowing the body of material which would be withheld. 120 Cong.Rec. S9331 (Remarks of Senator Kennedy) (daily ed. May 30, 1974). *See also* 120 Cong.Rec. S9330 (Remarks of Senator Hart) (daily ed. May 30, 1974).

■ In light of this history, and from the language of the amendment as well,

it is clear that the courts must examine each situation individually and determine if any of the specific harms enumerated by the statute would result from disclosure. If the government does not satisfy its statutory burden of proof, 5 U.S.C. § 552(a)(4)(B), that some such particular harm exists, the "general philosophy of full agency disclosure," *N.L.R.B. v. Sears, Roebuck & Co., supra* at 136, 95 S.Ct. at 1509, must prevail and the material be disclosed.

■ Defendant contends that disclosure of the material in question would "interfere with enforcement proceedings" by harming the Government's case in administrative and/or judicial proceedings, cutting off information from members of the public who would be reluctant to volunteer information if they knew their names or the information would be revealed, and stifling effective trial preparation which is protected by the attorney's work product privilege. The legislative history indicates, however, that these general contentions are insufficient under the amended exemption. The relevant explanation of this Exemption states that it:

> would apply whenever the Government's case in court—a concrete prospective law enforcement proceeding—would be harmed by the premature release of evidence or information not in the possession of known or potential defendants. This would apply also where the agency could show that the disclosure of the information would substantially harm such proceedings by impeding any necessary investigation before the proceeding. In determining whether or not the information to be released will interfere with a law enforcement proceeding it is only relevant to make such determination in the context of the particular enforcement proceeding.

120 Cong.Rec. S9329 (Remarks of Senator Hart) (daily ed. May 30, 1974). In this case, none of the specific types of interference has been shown. The Court has reviewed the material in question

and concludes that release of the information would not block further information of the same type from similar sources nor would it stifle effective preparation of the case. In addition, it does not appear that the specific enforcement proceeding would be harmed. Whatever value Title Guarantee may gain from the information sought will not be based on the timing of such release but rather on its determination of whether any material contained in the released documents supports its contentions. *See N.L. R.B. v. Schill Steel Products, Inc.*, 408 F.2d 803, 805 (5th Cir. 1969). This value is precisely that which is contemplated by the Freedom of Information Act and is not restricted by the exemptions to the Act.

Defendant's further contention that the documents would constitute an unwarranted invasion of personal privacy seems to hinge on a rather wide interpretation of Exemption 7(C). According to the defendant, the right to privacy here includes the "right to select the people to whom . . . (one) will communicate his ideas." The court does not agree. The cases applying Exemption 7(C) are generally concerned with items which are much more commonly thought of as private. *See, e. g., Rural Housing Alliance v. U. S. Department of Agriculture*, 162 U.S.App.D.C. 122, 498 F.2d 73 (1974) (information concerning marital status, legitimacy of children, identity of fathers of children, medical conditions, welfare payments, alcoholic consumption, family fights); *Wine Hobby U.S.A. v. I.R.S.*, 502 F.2d 133 (3d Cir. 1974) (home address, family status); *Ackerley v. Ley*, 137 U.S.App.D.C. 133, 420 F.2d 1336 (1969) (medical files); *Ditlow v. Schultz*, 379 F.Supp. 326 (D.D.C. 1974) (travel history). The court has examined the material in question and has found no personal matters which should be protected under Exemption 7(C).

With regard to defendant's final contention that disclosure would reveal the identity of a confidential source, the Court notes that the Conference Report accompanying the final version of the bill which created Exemption 7(D) states that the term "confidential source" was employed

> to make clear that the identity of a person . . . may be protected if the person provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.

S.Rep.No.93–1200, 93d Cong., 2d Sess. 13, U.S.Code Cong. & Admin.News, p. 6291 (1974). In the present situation, defendant has not presented any evidence that the material which is sought was elicited after an express assurance of confidentiality. In such a case, it is reasonable to infer that no such assurance was made, and, in any event, the burden of demonstrating such an assurance is on the government. 5 U.S.C. § 552(a)(4)(B). Thus, the crucial inquiry is whether it is reasonable to infer that the statements were made under some understanding on the part of the deponent that his statements would be confidential. The court has reviewed the material and concludes that no such inference is reasonable. The nature of the material as well as the identity of the deponents indicates that an understanding of confidentiality or lack of it would be entirely irrelevant to whether the information would have been offered to the Board.

Accordingly, the Board's motion to dismiss the complaint, or, in the alternative, for summary judgment, is denied. Plaintiff's motion for summary judgment is granted to the extent that the Board is directed to turn over the material sought by the plaintiff for inspection and copying forthwith. It appears that if the material is disclosed forthwith, Title Guarantee will have adequate time to review these documents prior to the scheduled hearings. The court finds that, unlike the renegotiation procedures in *Bannercraft*, the nature of an unfair labor practice proceeding is such that plaintiff will be irreparably harmed if the material is not disclosed prior to those hearings. Therefore, should the material not be made available to Title

Guarantee in advance of the administrative hearings, the Board is enjoined from conducting any hearings in this matter until such time as it complies with this decision.

So ordered.

## ON MOTION FOR STAY

The National Labor Relations Board ("N.L.R.B." or the "Board") has moved pursuant to Fed.R.Civ.P. 62(c) for a stay of the order of this court issued on October 10, 1975 directing the N.L.R.B. to turn over forthwith, pursuant to the Freedom of Information Act, as amended ("the Act"), 5 U.S.C. § 552, certain material sought by the plaintiff, and enjoining the Board from conducting an unfair labor practice hearing pending compliance with that order. The N.L.R.B. has not complied with this court's order.

In support of its motion, the N.L.R.B. contends that: 1) it is likely to prevail on the merits of its appeal of this court's order; 2) it will suffer irreparable injury if a stay is not granted; 3) plaintiff will suffer no substantial harm as a result of the granting of a stay; and 4) a stay would serve the public interest.

With regard to the merits of the case, the N.L.R.B. contends—as it did in its original opposition to the relief sought by the plaintiff—that the material in question is exempt from disclosure under Exemptions 5 and 7 of the Act, 5 U.S.C. § 552(b)(5), (7), and that this court is without power to enjoin the Board's proceedings pending compliance with this court's order. Specifically, the N.L.R.B. reasserts that *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975), and *Brockway v. Department of the Air Force,* 518 F.2d 1184 (8th Cir. 1975), stand for the proposition that the material is not subject to disclosure under Exemption 5. It also claims that *Wellman Industries, Inc. v. N.L.R.B.,* 490 F.2d 427 (4th Cir. 1974), and several cases in districts outside of this Circuit are authority for the proposition that affidavits obtained in connection with unfair labor proceedings are

exempt from disclosure under Exemption 7. Finally, the N.L.R.B. contends that under the doctrine of exhaustion of administrative remedies, *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938), as applied to Freedom of Information Act cases, *Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974); *Sears, Roebuck & Co. v. N.L.R.B.,* 153 U.S.App.D.C. 380, 473 F.2d 91 (1972), *cert. denied,* 415 U.S. 950, 94 S.Ct. 1474, 39 L.Ed.2d 566 (1974), this court is without power to enjoin the Board's proceedings pending compliance with the court's order.

Each of these contentions has been dealt with fully in the original opinion ordering disclosure of the material in question and will be reviewed only briefly.

For the reasons stated in the original opinion the court adheres to its decision that the material in question is not exempt from disclosure under the Act. *N.L.R.B. v. Sears, supra,* dealt with materials which reflected "deliberative or policy-making processes," *E.P.A. v. Mink,* 410 U.S. 73, 89, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); *Soucie v. David,* 145 U.S.App.D.C. 144, 448 F.2d 1067, 1077 (1971), and as such, these materials were covered by Exemption 5. *Brockway v. Air Force, supra,* similarly was limited to a case where "the deliberative processes of the Air Force . . . (would be) best protected by permitting . . . (the material sought) to be exempted from disclosure." *Id.* at 1194. In this case, plaintiff is seeking disclosure of purely factual materials which are not covered by Exemption 5. *E.P.A. v. Mink, supra.*

The cases relied upon by the defendant in connection with Exemption 7 were all decided prior to the recent amendments of the Act and are simply not in point. The amended Exemption 7, rather than representing the codification of the pre-amendment case law—as the Board contends—was the result of Congressional dissatisfaction with the application of the Act, 120 Cong.Rec. H10868 (Nov. 20, 1974); 120 Cong.Rec.

S9330–31 (May 30, 1974), and was designed to narrow the exemption. *Attorney General's Memorandum on the 1974 Amendments to the Freedom of Information Act* 8 (1975). Exemption 7 as it currently stands requires that material be disclosed unless it can be shown that one of a specific set of harms would result from disclosure.[1] The court has conducted *in camera* examination of the material in question and has determined that none of these harms would be forthcoming from disclosure of the specific materials at issue here. Moreover, the N.L.R.B. has clearly not satisfied its statutory burden of proof, 5 U.S.C. § 552(a)(4)(B), in this regard.

■ With respect to the injunctive powers of this court, the court adheres to its original decision that "there is jurisdiction to enjoin agency proceedings pending resolution of a Freedom of Information Act claim." *Sears, Roebuck & Co. v. N.L.R.B., supra* at 93. The doctrine of exhaustion of administrative remedies, *Myers v. Bethlehem Shipbuilding Corp., supra,* applies where "the administrative remedy is as likely as the judicial remedy to provide the wanted relief." K. C. Davis, *Administrative Law* § 20.01 at 56 (1958). "No court requires exhaustion where exhaustion will involve irreparable injury." *Id.* Here, the plaintiff has exhausted the available administrative channels and has been denied access to the requested

material.[2] If the unfair labor proceeding continues and plaintiff does not prevail in that matter because of a lack of opportunity to adequately prepare, it is hardly likely that any judicial review would ever undo the harm.

Moreover, in the present case the court has determined after *in camera* inspection that plaintiff would not require a substantial period of time to review the material and adequately prepare for the Board proceedings. Had the N.L.R.B. complied with this court's original order there would have been no need for a postponement of the Board proceedings. The N.L.R.B. has chosen, however, not to comply with the disclosure order and seeks to continue its administrative proceeding without giving the plaintiff the benefit of review of material which this court has determined it is entitled to under the Act. "With the express vesting of equitable jurisdiction in the district court by . . . (the Act), *"Renegotiation Board v. Bannercraft Clothing Co., supra* 415 U.S. at 20, 94 S.Ct. at 1038, this court will utilize its inherent powers as an equity court, *cf., id.,* to bar such obviously inequitable procedures.

The defendant relies on *Renegotiation Board v. Bannercraft, supra,* for the proposition that injunctions against administrative proceedings pending ultimate resolution of Freedom of Information Act controversies will not be issued.[3]

---

1.  Once it is determined that a request pertains to "investigatory records compiled for law enforcement purposes," the next question is whether release of the material would involve one of the six types of harm specified in clauses (A) through (F) of amended exemption 7. If not, the material must be released despite its character as an investigatory record compiled for law enforcement purposes, and (generally speaking) even when the requester is currently involved in civil or criminal proceedings with the Government.

    *Attorney General's Memorandum, supra* at 6–7.

2.  Indeed, the Acting Chief Administrative Law Judge of the N.L.R.B. wrote in his order denying disclosure:

    If, having exhausted . . . (the Board's own Freedom of Information Act proce-

dures, 29 C.F.R. § 102.17, Title Guarantee) is of the opinion that the statements referred to in its Notice to Produce have been improperly withheld by the Board's General Counsel under the Freedom of Information Act, its recourse under that Act is to an appropriate United States District Court, as provided for in 5 U.S.C. 552(a)(3) . . . . . *Title Guarantee Company and District 65,* No. 2–CA–13745, N.L.R.B. Division of Judges (D.C. September 9, 1975) at 2.

3.  *Bannercraft* and all of the other cases cited by the parties and discussed herein deal with the question of preliminary injunctive relief pending resolution of Freedom of Information claims. Here, this court has determined that plaintiff is entitled to summary judgment on the merits and the equitable considerations weigh commensurately more heavily in plaintiff's favor.

In truth, *Bannercraft* supports the issuance of an injunction in the instant case. *Bannercraft* was specifically limited by the Court to negotiation situations where discussions could reasonably continue while an action was pending in litigation. 415 U.S. at 20, 94 S.Ct. at 1028. Here, however, unlike *Bannercraft*, plaintiff is threatened with an impending unfair labor proceeding. *De novo* review of such a proceeding is unavailable. 29 U.S.C. §§ 10(e), 160(e); *Universal Camera Co. v. N.L.R.B.*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951). *Compare* 5 U.S.C.Sup. § 1218; *Renegotiation Board v. Bannercraft, supra* 415 U.S. at 23, 94 S.Ct. 1028 (*de novo* review available from Renegotiation Board decision). To deny plaintiff the opportunity to review the requested material prior to the hearing might effectively foreclose any value in the disclosure ordered by this court. This is precisely the type of situation in which *Bannercraft* implies that injunctive relief would be proper and in which the district courts have granted such relief. *Cessna Aircraft Co. v. N.L.R.B.*, 405 F.Supp. 1042 (D.Kan., 1975).

The curious aspect of defendant's present motion is that the Board itself has asserted that the exemptions to the Act parallel the discovery rules in the civil litigation context. The defendant cannot, then, reverse itself and claim that "discovery" of the material in question should be made subsequent to the completion of an administrative hearing. Title Guarantee has sought this material in the discovery context for the purpose of preparation for an unfair labor proceeding.[4] While it is clear that the rights accorded under the Act are not limited to litigants in an adversary proceeding, *N.L.R.B. v. Sears, Roebuck & Co., supra* 421 U.S. at 149, 95 S.Ct. 1504, it is equally clear that the fact that a plaintiff is in an adversary position should not compromise his rights under

the Act. *See* S.Rep.No.813, 85th Cong., 1st Sess. at 7. This court has determined that disclosure is required and the court believes that if the policy of the Act is to have any real value, the plaintiff is entitled to his discovery prior to the administrative action.

The Board's other contentions can be dealt with summarily. For the reasons stated herein and in the original opinion this court believes that plaintiff will suffer irreparable harm if a stay of this court's order is granted. On the other hand, defendant has not demonstrated any harm in delaying the administrative proceeding until appellate review of the Freedom of Information claim is completed.

With regard to the public interest question, it is well-established that the Freedom of Information Act was enacted in order to ensure a "general philosophy of full agency disclosure." *N.L.R.B. v. Sears, Roebuck & Co. supra* at 136, 95 S.Ct. at 1504, 1509, which would "secure . . . information from possibly unwilling official hands." *E.P.A. v. Mink, supra* 410 U.S. at 80, 93 S.Ct. at 832. The Board, by its present motion, is seeking to enjoy the fruits of an unfair labor proceeding while refusing to comply with this court's order and to effectuate the "broadly conceived . . . public right," *id.*, accorded by the Act. If the N.L.R.B.'s proceedings were to continue without disclosure of the material in question, not only the teeth but the very breath of the act would be taken out.

Accordingly, defendant's motion for a stay of this court's order dated October 10, 1975 directing defendants to make available forthwith the material sought by the plaintiff and enjoining the N.L.R.B. proceedings should the Board choose not to disclose the material requested by the plaintiffs is denied.

So Ordered.

---

4. The need for improved discovery procedures in connection with unfair labor practice proceedings has recently been underscored by a report of the New York County Lawyer's Association. N.Y.L.J., Nov. 19, 1975, p. 1, col. 2; p. 2, col. 5.